NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-668                                         Appeals Court

COMMONWEALTH  vs.  FRANK VALDEZ.[1]

No. 14-P-668.

Middlesex.     February 3, 2015. - September 14, 2015.

Present:  Cypher, Hanlon, & Agnes, JJ.

Practice, Criminal, Plea, Presumptions and burden of proof.
     Alien.

Indictment found and returned in the Superior Court Department on September 20, 1988.

A motion to withdraw a guilty plea, filed on November 4, 2013, was considered by Kathe M. Tuttman, J., and a motion for reconsideration was also considered by her.

Scott W. Kramer for the defendant.
Jamie Michael Charles, Assistant District Attorney, for the Commonwealth.

HANLON, J.  The defendant appeals from the orders denying

his motions to vacate a 1989 guilty plea, and for

reconsideration.  He argues that his plea was invalid because

the plea judge failed to advise him, as required by G. L.

_____

[1] Also known as Franklin Falcone.

c. 278, § 29D, of all the possible immigration consequences from such a plea -- including, particularly, the possibility of exclusion from admission if he left the United States and attempted to return. We recognize that, on this record, the Commonwealth is unable to prove that the defendant received the required warning. However, because the defendant has not been excluded from the United States, and the United States Immigration and Customs Enforcement (ICE) has taken no steps to accomplish that, we affirm.

In support of his motion to vacate his plea, the defendant filed an affidavit reciting that he was born in the Dominican Republic, but was admitted to the United States as a "lawful resident alien" in 1985. He received a high school graduate equivalency degree from a school in the Bronx, New York, and had been "gainfully employed by a number of employers including a subcontractor for the U.S. Navy at the Brooklyn Navy Yard." At the time he filed the motion, he had been in a sixteen-year relationship with a United States citizen, and they had three children, ages fourteen, twelve, and nine years old. He owned an automobile sales business and resided in Connecticut.

The defendant pleaded guilty on January 25, 1989, to one count of larceny of a motor vehicle and was sentenced to five

years of imprisonment.[2]  On November 4, 2013, he filed a motion to "vacate judgment," citing G. L. c. 278, § 29D.  He also asserted that he had consulted an immigration attorney to determine whether he could become a citizen of the United States and, given his "desire to travel outside of the United States, especially to visit with friends and family who[m he had] not seen in many years," whether he could do so.  According to the defendant, the attorney told him that, because of his 1989 conviction, he was deportable, was ineligible to become a naturalized citizen, and would be excluded from the United States if he left and tried to return.[3]

---

[2] The docket indicates that the sentence was to be served at the Massachusetts Correctional Institution at Concord.

[3] The defendant also filed an affidavit from the attorney, who described himself as "specializing in Immigration and Naturalization Law."  The affidavit is included in the record and it describes in painstaking detail, and with specific reference to relevant Federal statutes, the attorney's conclusion that, as a result of the defendant's conviction, he "is now therefore deemed an 'aggravated felon' pursuant to Section 101(a)(43)(G) of the Immigration and Nationality Act (hereinafter 'INA'), codified at 8 U.S.C.A. § 1101(a)(43)(G). This conviction independently renders him deportable from the United States pursuant to INA § 237(a)(2)(A)(iii), codified at 8 U.S.C.A. § 1227(a)(2)(A)(iii), as a 'resident alien' convicted of an aggravated felony any time after admission."  The attorney also opined that the defendant was deportable independently because his conviction was for a crime "traditionally interpreted under the immigration laws as a crime involving moral turpitude. . . .  Pursuant to INA § 237(a)(2)(A)(i), codified at 8 U.S.C.A. § 1227(a)(2)(A)(i), [the defendant] is also deportable from the United States for having been convicted of a crime involving moral turpitude, for which a sentence of one (1) year or longer may be imposed, committed within five (5)

In support of its opposition to the defendant's motion, the Commonwealth filed an affidavit from the plea judge (who since had retired).  In the affidavit, the judge stated that, although he did not recall the defendant's case specifically, during the time period when he accepted the plea, the judge had used a "script" for providing immigration warnings before accepting a guilty plea.  As a result, the judge was certain that he had "informed the defendant that, if he . . . were not a citizen of the United States, the guilty plea might lead to his . . . deportation or prevent him . . . from becoming a naturalized citizen."  The judge added that, at some point after 1988, he had "added a warning that the guilty plea might also prevent reentry into the United States, but [he could not] recall precisely when [he] did so."

The motion judge denied the defendant's motion to vacate his plea without a hearing.  She found that, with respect to reentry into the United States, the defendant had failed to establish that he would be subject to a written policy of exclusion should he choose to leave the United States and desire

_____

years after the date of his admission to the United States."  As a result, the attorney concluded that, should the defendant apply for naturalization, his application would be denied, and that if "the defendant traveled outside of the United States and attempted to reenter the United States, he would be deemed inadmissible to the United States pursuant to INA § 212(a)(2)(A)(i)(I), codified at 8 U.S.C.A. § 1182(a)(2)(A)(i)(I), and 'removal proceedings' would be commenced against him."

to reenter; his showing was "no more than a hypothetical risk." On January 10, 2014, the defendant's motion for reconsideration was denied by the motion judge; he timely appealed both orders.

"[I]f the court fails to give immigration warnings and the defendant 'at any time shows that his plea and conviction may have one of the enumerated consequences, the [c]ourt . . . shall vacate the judgment, and permit the defendant to withdraw the plea' (emphasis supplied). G. L. c. 278, § 29D. The statute is equally explicit that, absent a record that the warnings were provided, 'the defendant shall be presumed not to have received the required advisement.'" Commonwealth v. Grannum, 457 Mass. 128, 133 (2010), quoting from G. L. c. 278, 29D. The statute unambiguously places on the Commonwealth the burden of proving that the § 29D requirements were "satisfied, irrespective of the amount of time that may have passed between a conviction and a defendant's motion to withdraw his plea or his admission to sufficient facts." Ibid., quoting from Commonwealth v. Jones, 417 Mass. 661, 664 (1994).

That is the situation here. There appears to be no record of the defendant's 1989 plea colloquy, and the Commonwealth's attempt to reconstruct the record makes it clear that, while there is reason to believe that the defendant was warned that he could be subject to deportation and denial of naturalization, the plea judge was not certain that he had advised the defendant

that he could be excluded from admission to the United States. "Therefore, the defendant is entitled to a presumption that he did not receive [that] immigration warning[], and the Commonwealth has not satisfied its burden to establish that the presumption has been overcome." Id. at 134.

However, even when it is clear that the defendant did not receive the proper warning, the "remedy clause of G. L. c. 278, § 29D, is triggered only when a defendant can . . . demonstrate that he 'may' become subject to one of the immigration consequences enumerated in the statute. [The court has] construe[d] this requirement to mean that a defendant must demonstrate more than a hypothetical risk of such a consequence, but that he actually faces the prospect of its occurring." Commonwealth v. Casimir, 68 Mass. App. Ct. 257, 259 (2007), quoting from Commonwealth v. Berthold, 441 Mass. 183, 185 (2004).

In Berthold, although the defendant had not received all of the warnings required by the statute, he had been told that he "could be deported." 441 Mass. at 184. "Because the defendant was warned of the precise immigration consequence that he subsequently faced, the motions to withdraw his guilty pleas were properly denied." Id. at 186-187. In Casimir, the Commonwealth made no claim that the presumption applied that the warnings had been provided to the defendant (who sought to

become a United States citizen), and the court assumed, "without deciding, that [he] was not provided the immigration warning." Casimir, supra at 258-259.  Nonetheless, "[b]ecause there ha[d] been no showing that the defendant [was] actually facing any of the enumerated consequences that trigger the allowance of a motion to withdraw a guilty plea pursuant to G. L. c. 278, § 29D, i.e., deportation, exclusion from the United States, or the denial of naturalization, his claim [was] not ripe.  Thus, it was error for the . . . judge to have allowed his motion." Id. at 259.

Here, the defendant claimed that, as a consequence of his plea, he is deportable, is ineligible for naturalization, and would be denied reentry to the United States.  Because the Commonwealth established that the defendant received proper warnings about his risk of deportation and denial of naturalization, to succeed here, the defendant must show that he faces the consequence of exclusion.

Larceny is a crime involving moral turpitude.  See Commonwealth v. Cano, 87 Mass. App. Ct. 238, 245 n.15 (2015), quoting from Morasch v. Immigration & Naturalization Serv., 363 F.2d 30, 31 (9th Cir. 1966) ("[P]etty or grand larceny, i.e., stealing another's property qualifies [as a crime involving moral turpitude"]).  As a result of the 1989 plea, the defendant not only is classified as deportable based on an aggravated

felony conviction,[4] but also qualifies as inadmissible upon reentry resulting from the conviction of a crime involving moral turpitude.[5]  See 8 U.S.C. § 1227(a)(2)(A)(iii) (2012); 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2012).  In light of the foregoing, the defendant very likely would be excluded from reentry if he travels outside the United States.  Cf. Grannum, supra at 135-136.

The question before us is whether the defendant's showing is sufficient to meet his burden.  On the one hand, we have in mind the recent teaching of the Supreme Judicial Court, albeit in a different context, that "[a]fter the 1996 effective date of amendments to the 1952 Immigration and Nationality Act, . . . 'if a noncitizen has committed a removable offense . . . , his removal is practically inevitable,' subject to limited exceptions."  Commonwealth v. DeJesus, 468 Mass. 174, 180

---

[4] "Any alien who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii) (2012).  "The term 'aggravated felony' means . . . (G) a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year."  8 U.S.C. § 1101(a)(43) (2012).

[5] "[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of -- (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . . is inadmissible."  8 U.S.C. § 1182(a)(2)(A)(i) (2012).  Notably, the exception to this section is inapplicable here, as the sentence imposed on the defendant was more than one year.  See 8 U.S.C. § 1182(A)(2)(A)(ii)(II) (2012).

(2014), quoting from Padilla v. Kentucky, 559 U.S. 356, 363-364 (2010). Arguably, requiring the defendant, despite his attorney's informed advice, to risk exclusion by leaving the country, including his family and his business, to test the issue whether he actually would be excluded is too great a burden. Nor is it reasonable to require a motion judge, in the context of a hearing on a motion to withdraw a plea, to determine whether the defendant actually wished to leave the country,[6] or to predict, with any hope of accuracy, what actions ICE officials might take at some future date after unforeseen national and international events.

On the other hand, in most of the recent cases where a defendant's motion under § 29D was allowed, he already was experiencing the consequences for which he had not been warned. See, e.g., Commonwealth v. Soto, 431 Mass. 340, 342 (2000), where the "judge at the plea colloquy did not advise the defendant that he could be excluded from admission to the United States." After his plea, "the Immigration and Naturalization Service (INS) initiated proceedings to remove the defendant from the United States -- he was in Puerto Rico at the time -- because of his prior narcotics conviction. In the notice to

---

[6] It simply is unclear how that could be determined -- with the purchase of an airline ticket, documentation that the defendant's mother was actually dying, or evidence that, all his life, the defendant had said that he wanted to see the Taj Mahal someday?

appear, the INS classified him as an 'arriving alien.'" Id. at 341. As a result, the court ordered that the defendant's motion to withdraw his guilty plea be allowed and vacated the judgment. Id. at 342. Compare Commonwealth v. Mahadeo, 397 Mass. 314, 318 (1986) (defendant scheduled for deportation hearing); Commonwealth v. Marques, 84 Mass. App. Ct. 203, 203-204 (2013) (defendant denied reentry following a trip to Cape Verde). In Commonwealth v. Grannum, supra at 136, the court noted that the defendant had not established that he "has been taken into custody by Federal immigration authorities, or that he is currently in deportation proceedings, or has been notified by Federal immigration authorities that he is now subject to deportation, or that, as a result of the challenged conviction (alone or in conjunction with other convictions), the express written policy of the Federal immigration authorities calls for the initiation of deportation proceedings against him."[7]

---

[7] The defendant did submit to the motion judge a memorandum from ICE on the subject of "Civil Immigration Enforcement Priorities for the Apprehension, Detention, and Removal of Aliens." The memorandum "outline[d] civil immigration enforcement priorities of [ICE] as they relate to the apprehension, detention, and removal of aliens." We note that the memorandum does not address the issue of exclusion in circumstances like the defendant's.

In addition, even if the enforcement priorities described in the memorandum could reasonably be read as applying to the decision whether to exclude someone, the memorandum in fact calls for the exercise of prosecutorial discretion in cases such as the defendant's, stating, "The rapidly increasing number of

Finally, we look at Commonwealth v. Rodriquez, 70 Mass. App. Ct. 721 (2007).  In Rodriquez, as in this case, the defendant had been advised at the time of her initial plea "of the consequence of deportation but [the judge] failed to warn that her guilty plea additionally 'may have the consequences of . . . exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States,' as mandated by G. L. c. 278, § 29D, inserted by St. 1978, c. 383."  70 Mass. App. Ct. at 721.  That defendant was then "the subject of deportation proceedings," id. at 723, and this court "agree[d] with the motion judge that because the defendant [then] also face[d] immigration consequences about which she was not warned (denial of readmission), the plain language of the statute require[d] that the defendant be permitted to withdraw her guilty plea," id. at 722.  More specifically, we concluded that "the defendant's conviction -- a drug-related 'aggravated felony' for purposes of immigration law -- results in the automatic, and now permanent, denial of readmission to the United States, see 8 U.S.C. § 1182(a)(9)(A) (2000), . . . and

criminal aliens who may come to ICE's attention heightens the need for ICE employees to exercise sound judgment and discretion consistent with these priorities when conducting enforcement operations, making detention decisions, making decisions about release on supervision pursuant to the Alternatives to Detention Program, and litigating cases.  Particular care should be given when dealing with lawful permanent residents, juveniles, and the immediate family members of U.S. citizens" (emphasis supplied).

that this is an 'enumerated consequence' of the defendant's plea about which she was not warned."  Ibid.

The present case is a close one.  It is difficult to imagine what other showing this defendant could have made to show "that his plea and conviction may have . . . one of the enumerated consequences."  G. L. c. 278, § 29D, as appearing in St. 2004, c. 225, § 1.  On the other hand, there is no pending proceeding to exclude him from the United States, nor is there a pending deportation proceeding as there was in Rodriquez that would increase the likelihood that he would be excluded.

On balance we are constrained to conclude that the motion judge's decisions were proper.  See Grannum, 457 Mass. at 136 ("Mere eligibility for deportation is not a sufficient basis for relief under G. L. c. 278, § 29D.  Nor is it sufficient to show that, if the Federal government were to initiate deportation proceedings, the defendant almost inevitably would be deported").[8]

> Orders denying motions to
> vacate judgment and for
> reconsideration affirmed.

---

[8] While we affirm the orders denying the defendant's motions at this time, nothing in this opinion should prevent the defendant from filing another motion, should he be able to meet the Grannum test at some future date.