## Commonwealth vs. Elan DeJesus.

Suffolk. January 7, 2014. - May 19, 2014.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Controlled Substances. Practice, Criminal,* Plea, Assistance of counsel. *Constitutional Law,* Plea, Assistance of counsel. *Due Process of Law,* Plea, Assistance of counsel. *Alien.*

A Superior Court judge hearing a criminal defendant's motion for a new trial did not commit an abuse of discretion in allowing the defendant to withdraw his plea of guilty to an indictment charging possession of cocaine with intent to distribute, where defense counsel's advice to the defendant (a noncitizen) that he would be "eligible for deportation" if he pleaded guilty was incomplete and therefore constitutionally deficient, given that, under applicable immigration law, such a conviction makes deportation or removal from the United States automatic or "presumptively mandatory"; and where the defendant met his burden to establish a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial. [178-184] Cordy, J., dissenting.

Indictment found and returned in the Superior Court Department on February 3, 2009.

A motion for a new trial, filed on February 27, 2012, was heard by *Charles J. Hely,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Zachary Hillman,* Assistant District Attorney, for the Commonwealth.

*Eduardo Antonio Masferrer (Oriosto Medrano Santana* with him) for the defendant.

*Emma Winger & Wendy Wayne,* Committee for Public Counsel Services, for Committee for Public Counsel Services Immigration Impact Unit, amicus curiae, submitted a brief.

Duffly, J. We are asked in this case to consider whether defense counsel's advice to his noncitizen client that if the client pleaded guilty to drug possession charges he would be

"eligible for deportation" was constitutionally deficient. Because, under applicable immigration law, the conviction of a noncitizen of possession with intent to distribute cocaine makes deportation or removal from the United States automatic or "presumptively mandatory," see *Padilla* v. *Kentucky*, 559 U.S. 356, 368-369 (2010) (*Padilla*), citing 8 U.S.C. § 1227(a)(2)(B)(i) (2006), we conclude that counsel's advice was constitutionally deficient and that the defendant suffered prejudice as a result. Accordingly, we affirm the decision of the Superior Court judge allowing the defendant to withdraw his guilty plea.

*Background.* The defendant pleaded guilty to possession with intent to distribute a class B substance (cocaine), G. L. c. 94C, § 32A (*a*), and received a sentence of probation. After a subsequent arrest for driving without a license, the defendant was taken into custody by immigration authorities; he then filed a motion for a new trial in the Superior Court seeking to withdraw his guilty plea. A Superior Court judge, who also had been the plea judge, conducted an evidentiary hearing on the defendant's motion, at which the defendant and his plea counsel both testified. The judge thereafter made detailed findings and issued a comprehensive memorandum of decision and order allowing the motion. He determined that, under applicable immigration law, it is clear that the conviction of a noncitizen of possession with intent to distribute cocaine makes deportation or removal from the United States automatic or "presumptively mandatory," see *Padilla, supra*, and therefore that counsel's advice was incomplete. The judge concluded that the defendant suffered prejudice as a result of counsel's constitutionally deficient advice, and allowed the defendant's motion to withdraw his guilty plea. The Commonwealth appealed, and we transferred the case to this court on our own motion.[1]

We summarize the judge's findings, which he noted as being based on testimony he had determined to be credible, supplementing those findings with certain details from the record where they are consistent with the judge's findings and determinations of credibility.

---

[1]We acknowledge the amicus brief submitted by the Immigration Impact Unit of the Committee for Public Counsel Services in support of the defendant.

The defendant was born in the Dominican Republic in 1983. He moved to the United States with his family when he was eleven years old and thereafter lived in Boston. All of the defendant's family members reside in the United States, including a daughter and, as of the date of the hearing, his pregnant wife. Although he is not a United States citizen, the defendant is now a lawful permanent resident of the United States. The defendant attended Boston public schools and graduated from Boston English High School with the aid of an individualized special needs education plan. After graduation, the defendant maintained steady employment with a parcel shipping company, where, at the time of his arrest, he had been employed for eight years loading boxes onto trucks. The arrest in this case was the first time that the defendant had been arrested.

In December, 2008, acting on a tip, Boston police officers approached a blue van and questioned two of its occupants; the defendant was the driver of the van. The passenger had an outstanding warrant and was arrested. The defendant agreed to accompany the officers to the police station, where police searched him, reaching into his groin area and recovering a small bag containing white powder. The defendant was then placed under arrest and ultimately indicted for trafficking in cocaine, twenty-eight grams or more, an offense that at that time carried a five-year mandatory minimum sentence of incarceration in State prison.

Defense counsel was aware that the defendant was not a United States citizen, and spoke with the defendant several times about deportation as a possible consequence of a conviction; counsel told the defendant that any guilty plea would make him "eligible for deportation," and that if the defendant agreed to the guilty plea he "face[d] being deported and being denied reentry into the United States."[2] Defense counsel was unavailable on the day of the plea hearing, June 1, 2010, and the defendant appeared in court with an attorney who worked in

---

[2]The judge heard testimony that defense counsel provided the defendant with the name and telephone number of an immigration lawyer. The judge was unable to determine from the testimony whether the defendant actually spoke with the immigration lawyer and received specific advice on the question of deportation.

defense counsel's office; substitute counsel did not discuss with the defendant the immigration consequences of his plea.[3] The defendant pleaded guilty to the lesser included offense of possession of cocaine with intent to distribute and was sentenced to two and one-half years' probation.

In 2011, while on probation, the defendant was arrested for driving with a suspended license. Following his arrest, the defendant was taken into the custody of Federal immigration authorities, placed in removal proceedings, and ordered to be removed from the United States. He was awaiting removal in February, 2012, when he filed the motion for a new trial seeking to withdraw his guilty plea.[4] The memorandum in support of that motion states that the defendant "has been living in the United States since he was a child and all his family and friends live here. Remaining in the United States is more important to him than any jail sentence he could have received under [the] charges." In his affidavit in support of the motion, the defendant avers, among other things:

> "Neither [my defense counsel] nor substitute counsel told me that I would be subject to mandatory deportation if I entered a guilty plea to possession with intent to distribute a controlled substance, no matter what sentence I received. . . . If I had known that deportation would be mandatory, even when all I got was probation, I would have exercised my right to have the [previously filed] motion [to suppress] heard and then go to trial."

[3]During the plea colloquy, the judge gave the defendant the immigration consequences warning required by G. L. c. 278, § 29D. The defendant also signed a printed waiver of rights form containing this information. In his decision allowing the defendant's motion to withdraw his plea, the judge observed correctly that such warnings are "not an adequate substitute for defense counsel's professional obligation to advise her client of the likelihood of specific and dire immigration consequences that might result from such a plea." *Commonwealth* v. *Clarke*, 460 Mass. 30, 48 n.20 (2011), citing *Padilla* v. *Kentucky*, 559 U.S. 356, 374 n.15 (2010) (*Padilla*).

[4]An order for the defendant's removal from the United States entered on March 1, 2012. In his brief, the defendant asserts that, after the allowance of his motion to withdraw his guilty plea, he filed a motion for relief with the board of immigration appeals. Subsequently, the removal order was vacated and he was released from the custody of the United States Department of Homeland Security.

Following an evidentiary hearing, the judge determined that, under *Padilla, supra* at 369, counsel's advice was incomplete and was constitutionally deficient in light of prevailing professional norms. In addition, the judge determined that the defendant had met his burden to establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Commonwealth* v. *Clarke*, 460 Mass. 30, 47 (2011) (*Clarke*), quoting *Hill* v. *Lockhart*, 474 U.S. 52, 59 (1985). The judge allowed the defendant's motion and vacated the defendant's plea of guilty to the offense of possession of cocaine with intent to distribute. The judge also reinstated that portion of the indictment charging the defendant with trafficking in cocaine, which had been dismissed with the Commonwealth's agreement under the terms of the plea arrangement.

*Discussion.* 1. *Standard of review.* A motion to withdraw a guilty plea is treated as a motion for a new trial pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). See *Commonwealth* v. *Furr*, 454 Mass. 101, 106 (2009). "Under Mass. R. Crim. P. 30 (b), a judge may grant a motion for a new trial any time it appears that justice may not have been done. A motion for a new trial is thus committed to the sound discretion of the judge." *Commonwealth* v. *Scott*, 467 Mass. 336, 344 (2014). We review the allowance of a motion to withdraw a guilty plea to determine whether the judge committed an abuse of that discretion or a significant error of law. *Id.* We accept the judge's findings of fact if supported by the evidence, because the judge who heard the witnesses testify is the "final arbiter on matters of credibility." *Id.*, quoting *Commonwealth* v. *Schand*, 420 Mass. 783, 787 (1995).

2. *Adequacy of advice.* In determining whether counsel has provided constitutionally ineffective assistance, "[w]e must determine 'whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence.' " *Clarke, supra* at 45, quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Satisfying

this standard necessarily satisfies the standard established by the United States Supreme Court in *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984). See *Clarke, supra.*

The Commonwealth argues that *Padilla, supra* at 368, 374, supports its claim that the defendant received correct advice when he was told that he was "eligible for deportation," and that if he pleaded guilty he would "face being deported and being denied reentry into the United States," noting that "eligible for deportation" was the language employed by the United States Supreme Court to describe the information that must be provided. The Court in *Padilla* used various terms to describe a defense attorney's obligation to give correct advice where the consequence of a guilty plea might make a defendant subject to adverse immigration consequences, but did not formulate the precise language that would satisfy that obligation, and understood that the content of the advice would depend on the circumstances. We conclude that advising a defendant faced with circumstances similar to those in this case that he is "eligible for deportation" does not adequately inform such a defendant that, if he were to plead guilty (e.g., as here, to a charge of possession with intent to distribute cocaine), then, upon apprehension, his removal from the United States would be presumptively mandatory under Federal law.

The decision in *Padilla, supra* at 360, begins its discussion of the issue with this statement:

> "We granted certiorari . . . to decide whether, as a matter of federal law, Padilla's counsel had an obligation to advise him that the offense to which he was pleading guilty would result in his removal from this country. We agree with Padilla that constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation."

Padilla, a lawful permanent resident of the United States for more than forty years, had pleaded guilty to transporting a large amount of marijuana in his tractor trailer, "charges that made his deportation virtually mandatory." *Id.* at 359. According to Padilla's assertions, assumed to be true for purposes of his post-conviction appeal, his trial counsel had "not only failed to

advise him of this consequence prior to his entering the plea, but also told him that he 'did not have to worry about immigration status since he had been in the country so long.' " *Id.*

The Court's decision described the dramatic changes that had taken place in "[t]he landscape of [F]ederal immigration law . . . over the last 90 years." *Padilla, supra* at 360. Earlier versions of applicable Federal law "included a critically important procedural protection to minimize the risk of unjust deportation. . . . Thus, from 1917 forward, there was no such creature as an automatically deportable offense." *Id.* at 361-362. After the 1996 effective date of amendments to the 1952 Immigration and Nationality Act, however, "if a noncitizen has committed a removable offense . . . , his removal is practically inevitable," subject to limited exceptions. *Id.* at 363-364. In light of this historical backdrop, the Court concluded that the "weight of prevailing professional norms support[ed] the view that counsel must advise her client regarding the risk of deportation." *Id.* at 367. See *Clarke, supra* at 41.

In Padilla's case, "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence of Padilla's conviction." *Padilla, supra* at 368, citing 8 U.S.C. § 1227(a)(2)(B)(i). The statute "specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Padilla, supra.* Although recognizing that there undoubtedly will be situations in which the deportation consequences of a particular plea are unclear or uncertain, and counsel's duty more limited, the Court stated that "when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." *Id.* at 369. In our decisions concerning counsel's duty to advise of immigration consequences since *Padilla* was issued, we have reiterated its holding. See *Commonwealth* v. *Sylvain,* 466 Mass. 422, 436, 438 (2013); *Commonwealth* v. *Marinho,* 464 Mass. 115, 125-126 & nn.12-13 (2013); *Clarke, supra* at 42.

Applying the standard articulated in those decisions to the circumstances here, we conclude that the terms of the relevant immigration statutes are succinct, clear, and explicit about the removal consequences for a noncitizen defendant convicted of

possession with intent to distribute cocaine. Pursuant to Federal statute, an alien "shall, upon the order of the Attorney General [of the United States], be removed" if he or she is convicted of an aggravated felony, see 8 U.S.C. § 1227(a)(2)(A)(iii) (2006), and the defendant's conviction of "possession with intent to distribute a class B controlled substance, G. L. c. 94C, § 32A, . . . [is an] aggravated felon[y]." *Clarke, supra* at 32 n.2. Under applicable Federal law, the defendant would have virtually no avenue for relief from deportation once convicted of that crime. See *Moncrieffe* v. *Holder*, 133 S. Ct. 1678, 1682 (2013) (Federal statute "prohibits the Attorney General [of the United States] from granting discretionary relief from removal to an aggravated felon, no matter how compelling his case"). Counsel therefore was obligated to provide to his client, in language that the client could comprehend, the information that presumptively mandatory deportation would have been the legal consequence of pleading guilty. Stated differently, counsel needed to convey that, if Federal authorities apprehended the defendant, deportation would be practically inevitable.[5]

Telling the defendant that he was "eligible for deportation" and that he would "face deportation" was not adequate advice because it did not convey what is clearly stated in Federal law. Advice that one is "eligible" for deportation conveys that the law requires additional conditions to be met before an individual could be removed and allows for the exercise of discretion in determining whether those conditions are met.[6] Such advice

[5]We do not dictate the precise language that must be employed, as each case will present different circumstances; for example, information given to an educated client who speaks English as his first language may take a different form when the client has a limited ability to comprehend or understand English. And, although the discretionary avenues to avoiding deportation are extremely limited, there may still be individuals who could avail themselves of those avenues. For example, a noncitizen who is convicted of an aggravated felony and shows a likelihood of torture upon deportation may be granted "withholding of removal, 8 U.S.C. § 1231(b)(3)(A), and deferral of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), Art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100 20, p. 20, 1465 U.N.T.S. 85; 8 [C.F.R.] § 1208.17(a) (2012)." *Moncrieffe* v. *Holder*, 133 S. Ct. 1678, 1682 n.1 (2013). See *Berhe* v. *Gonzales*, 464 F.3d 74, 87 (1st Cir. 2006).

[6]Numerous provisions in our statutory law use the word "eligible" to convey not that the law allows for only one consequence, but rather that conditions

does not convey what was the case here: that all of the conditions necessary for removal would be met by the defendant's guilty plea, and that, under Federal law, there would be virtually no avenue for discretionary relief once the defendant pleaded guilty and that fact came to the attention of Federal authorities.[7]

Because counsel failed to "provide the defendant with accurate advice concerning the deportation consequences of pleading guilty," *Commonwealth* v. *Sylvain, supra* at 438, given that the information did not convey that deportation would be the legal consequence of a conviction, counsel's representation fell below an objective standard of reasonableness, thus satisfying both the Federal and State performance prong. See *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984); *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See also *United States* v. *Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011) (defendant convicted of aggravated felony "entitled to know more than that it is possible that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty"); *State* v. *Sandoval*, 171 Wash. 2d 163, 167, 173-174 (2011) (advice to defendant convicted of aggravated felony that he "would not be deported immediately," and would have time to retain immigration counsel, deficient because it suggested deportation was "remote possibility").

3. *Prejudice to the defendant.* We next consider whether counsel's deficient performance prejudiced the defendant.[8] In *Clarke*, we stated that where a defendant claims that counsel's

---

are still to be met. See, e.g., G. L. c. 127, § 133A (prisoners "shall be eligible for parole" at end of minimum judicially imposed sentence); G. L. c. 140, § 122 (chief of police may "after an investigation into the criminal history of the applicant to determine eligibility for a license [to sell firearms] under this section, grant a license to any person except an alien, a minor, [or] a person who has been adjudicated a youthful offender").

[7]Similarly, advice that one "faces" deportation does not inform a client that deportation will be mandatory if one is apprehended by Federal authorities. There is a significant difference, for example, in a lawyer's advice to a client that the client faces five years of incarceration on a charge, as compared to advice that the conviction will result in a five-year mandatory minimum prison sentence.

[8]Although the Commonwealth states in its brief that it "is not challenging the judge's ruling on prejudice," a concession does not preclude our independent examination of the issue. Cf. *Commonwealth* v. *Poirier*, 458 Mass. 1014, 1015 (2010).

ineffective assistance induced him to plead guilty, the defendant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 46-47, quoting *Hill* v. *Lockhart,* 474 U.S. 52, 59 (1985). A defendant must provide an affidavit to that effect, and in addition, "he must 'convince the court that a decision to reject the plea bargain would have been rational under the circumstances.' " *Clarke, supra* at 47, quoting *Padilla, supra* at 372. A showing that a decision to reject the plea bargain would have been rational in the defendant's circumstances may be accomplished in one of three ways. The burden is on the defendant to show

> "that (1) he had an 'available, substantial ground of defence,' *Commonwealth* v. *Saferian, supra* at 96, that would have been pursued if he had been correctly advised of the dire immigration consequences attendant to accepting the plea bargain; (2) there is a reasonable probability that a different plea bargain (absent such consequences) could have been negotiated at the time; or (3) the presence of 'special circumstances' that support the conclusion that he placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty. *Hill* [v. *Lockhart,* 474 U.S. at 60]."

*Clarke, supra* at 46-47.

Based on the judge's findings, the defendant proffered two independently sufficient grounds that established prejudice. First, the judge's findings establish that, by waiving consideration of his motion to suppress, the defendant waived "a substantial ground of defence." In this connection, the judge found that conviction after trial was not a "near certainty" because the defendant's motion "had significant support in the evidence and law."

Second, the judge's findings establish the presence of "special circumstances" showing that the defendant "placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty." The judge found that the defendant was "very concerned" not only about the risk of a five-year mandatory sentence of incarceration, but also about

the risk of deportation, and that the defendant "had a lot to lose if he were to be deported" because he had been in the country since he was eleven years old, his family was in Boston, and he had maintained steady employment in the Boston area. We reject the Commonwealth's argument, made to the motion judge, that the defendant was not prejudiced notwithstanding these circumstances because he "got a very good deal": he received straight probation when he was facing a mandatory minimum sentence of five years of incarceration. If an assessment of the apparent benefits of a plea offer is made, it must be conducted in light of the recognition that a noncitizen defendant confronts a very different calculus than that confronting a United States citizen. For a noncitizen defendant, preserving his "right to remain in the United States may be more important to [him] than any jail sentence." *Padilla, supra* at 368. Thus, a determination whether it would be rational for a defendant to reject a plea offer "must take into account the particular circumstances informing the defendant's desire to remain in the United States." *People* v. *Picca*, 97 A.D.3d 170, 183-184 (N.Y. 2012). See *United States* v. *Orocio*, 645 F.3d 630, 645 (3d Cir. 2011), abrogated on other grounds by *Chaidez* v. *United States*, 133 S. Ct. 1103 (2013) (rational for noncitizen defendant to go to trial to retain chance of avoiding automatic deportation, even where trial involved serious risk of lengthy incarceration and deportation); *Denisyuk* v. *State*, 422 Md. 462, 488 (2011) (same); *State* v. *Sandoval*, 171 Wash. 2d at 175-176 (same).

Because the record provides a sufficient basis to support the judge's determination that the defendant met his burden to establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *Clarke, supra* at 47, quoting *Hill* v. *Lockhart*, 474 U.S. at 59, there was no abuse of discretion in the allowance of the defendant's motion for a new trial seeking to withdraw his guilty plea.

> *Order allowing motion for new*
> *trial affirmed.*

CORDY, J. (dissenting). I disagree with the court that the

behavior of the defendant's attorney with regard to his obliga-
tion to apprise his client of the potential immigration conse-
quences of pleading guilty to a reduced charge of possession
with intent to distribute cocaine fell "measurably below that
which might be expected from an ordinary fallible lawyer."
*Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). If anything,
under the circumstances, the attorney's attention to this matter
exemplified an earnest and reasonable attempt at alerting a cli-
ent intent on avoiding a jail sentence (on the five-year manda-
tory minimum trafficking charge) that there likely would be
deportation consequences of which the defendant needed to be
aware before committing to the plea bargain offered by the
Commonwealth. The testimony of plea counsel, Attorney Peter
T. Marano, at the motion hearing, which the judge found to be
"truthful and accurate on all the material points," bears this out.

Shortly before Attorney Marano began representing the
defendant, the United States Supreme Court decided *Padilla* v.
*Kentucky*, 559 U.S. 356 (2010), in which it "underscore[d]
how critical it is for counsel to inform [his] noncitizen client
that he faces the risk of deportation" and, consequently, held
that the Sixth Amendment to the United States Constitution
requires that "counsel must inform [his] client whether his
plea carries [such] a risk." *Id.* at 373-374. Because Marano
was aware that his client was not a citizen, he familiarized
himself with the *Padilla* decision and during the course of the
representation also consulted with an immigration attorney.
Marano then "spoke with the defendant several times about
deportation as a possible consequence of a conviction," and
told him that "any guilty plea would make him 'eligible for
deportation' " and that "he would be subject to the ramifica-
tions of deportation." Marano also told the defendant that he
was not an immigration lawyer, and was not fully familiar
with immigration law. Consequently, he advised the defendant
to seek the advice of such a lawyer so that he could better
evaluate the risk of deportation. He provided the defendant
with the name and telephone number of the immigration lawyer
with whom he had also consulted on that subject.

When the date for a hearing on the defendant's motion to
suppress the evidence approached, Marano learned that the

Commonwealth would accept a plea to a reduced charge of possession with intent to distribute, thus eliminating the risk of a five-year mandatory minimum sentence on conviction. Marano and the assistant district attorney understood that the plea offer would not be available after the hearing on the motion to suppress. Marano explained this to the defendant, and testified that he advised him, "[I]f you accept a plea, you face being deported from the country, denied admittance or naturalization, denied reentry, denied citizenship or naturalization."[1] Marano then requested at least one continuance of the hearing on his motion to suppress so that the defendant could fully consider the guilty plea offer and Marano's advice regarding the deportation consequences of pleading guilty, and could seek further advice from the immigration lawyer.

Before the next scheduled date for the motion to suppress, the defendant advised Marano that he wanted to accept the guilty plea offer. Marano testified that the defendant understood that he would be "eligible for deportation," but "his foremost concern was not going to prison."

At his guilty plea hearing, the judge further informed the defendant of the possibility of immigration consequences resulting from his guilty plea, as required by G. L. c. 278, § 29D. After signing a waiver of rights form, the defendant pleaded guilty and was sentenced to a term of probation. Deportation proceedings were not commenced. The following year, the defendant was arrested on a new offense, the office of the United States Immigration and Customs Enforcement was notified, and deportation proceedings were initiated.

I do not understand the ruling of *Padilla* v. *Kentucky*, or the subsequent rulings of this court on the subject to prescribe a certain form of words that an attorney must use in order to fall within the range of "reasonable professional assistance" required of counsel by the Sixth Amendment. *Strickland* v. *Washington*,

---

[1] During the hearing on the defendant's motion for a new trial, the judge asked Attorney Marano what his best memory was of the "words [he] used in advising [the defendant] on immigration matters." In response to the question, Attorney Marano testified: "My best memory is that if you accept a plea, you face being deported from the country, denied admittance or naturalization, denied reentry, denied citizenship or naturalization, and . . . that you should seek an immigration attorney's advice."

466 U.S. 668, 688-689 (1984). There was no inaccuracy or soft pedaling of advice here. Compare *State* v. *Sandoval*, 171 Wash. 2d 163, 173 (2011) ("required advice about immigration consequences would be a useless formality if, in the next breath, counsel could give the noncitizen defendant the impression that he or she should disregard what counsel had just said about the risk of immigration consequences"). To require more of criminal defense attorneys in the circumstances faced by Marano approaches very close to requiring them to be immigration attorneys. That is not the standard. If the court wishes to mandate specific safe harbor words such as "practically inevitable" or "presumptively mandatory," it is free to do so, but it should not reflect that requirement back on those who have given reasonable advice, sufficient to alert their clients to the real prospect of immigration consequences as they balanced those future possible consequences against their present liberty.

I would add that deportation has not been demonstrated to be inevitable in the aftermath of every plea of guilty that creates either "eligibility" or even a "presumption" of deportation. That deportation was ultimately sought after the defendant's subsequent arrest is hardly dispositive, and leaves unanswered whether such action ever would have been brought had he not been ensnared in another crime. As the court admits by its own choice of words, deportation is not "mandatory" or "inevitable." Indeed, the deportation proceeding is contingent on there being an "order" of removal from the Attorney General of the United States, and there still remain discretionary avenues to avoid deportation, albeit limited ones.[2]

Because I view the efforts of Attorney Marano with regard to apprising his client of the immigration consequences he faced by pleading guilty to be professionally reasonable, I would

[2]If there are limited exceptions to the "practically inevitable" result of deportation, do such exceptions need to be explored by defense counsel with the defendant as well to ensure adequate and accurate advice? And will a claim for ineffective assistance of counsel lie if a defendant proceeds to trial (and is convicted and sentenced) based on advice that fails to include a complete and accurate explanation of all possible exemptions that might be available?

conclude that he was not ineffective, and would reverse the grant of a new trial.[3]

---

[3]There are precious few appellate cases focused on the particular phrasing of immigration advice sufficient to pass constitutional muster. In *United States* v. *Orocio*, 645 F.3d 630, 641-643 (3d Cir. 2011), abrogated on other grounds by *Chaidez* v. *United States*, 133 S. Ct. 1103 (2013), the United States Court of Appeals for the Third Circuit concluded that counsel was ineffective for failing to give any advice to his client regarding the adverse immigration consequences of pleading guilty to a controlled substance offense that it found would "result in near-mandatory removal." Similarly, in *Denisyuk* v. *Maryland*, 422 Md. 462, 482 (2010), the Maryland Supreme Court concluded that counsel was ineffective for providing no advice regarding the immigration consequences of a guilty plea to assault charges.