The defendant, Jose Ortiz, appeals from the Superior Court's denial of his motion to withdraw his guilty pleas based on his counsel's failure adequately to inform him of the pleas' immigration consequences. We vacate the order denying the defendant's motion to withdraw his guilty pleas (motion for new trial) and remand the case for further proceedings.
Background. Ortiz is a citizen of the Dominican Republic and a lawful permanent resident of the United States. He has lived in this country since the age of three. All of his family, including a young son, are in the United States. In January, 2012, he was convicted after trial of trafficking in cocaine over 200 grams, G. L. c. 94C, § 32E(b )(4), and trafficking in heroin in over fourteen grams, G. L. c. 94C, § 32E(c )(1). He was sentenced to fifteen years on the first count and five on the second, to be served concurrently. He has no other criminal convictions that would have allowed for his deportation.
The convictions were vacated in 2014 due to Annie Dookhan's involvement as a confirmatory chemist in the case. See Commonwealth v. Scott, 467 Mass. 344, 349-350 (2014) (describing Dookhan's misconduct). At that time, Ortiz had served between four and five years of his sentence.
After the convictions were vacated, the Commonwealth expressed an intent to reprosecute. In 2015, following a colloquy, Ortiz pleaded guilty to possession with intent to distribute a class A substance, G. L. c. 94C, § 32(a ) and possession with intent to distribute a class B substance, G. L. c. 94C, § 32A(a ), and was sentenced to three years' probation with no credit for time served. Based on his pleas, he was taken into custody by Immigration and Customs Enforcement officers and placed in removal proceedings. These proceedings were virtually certain to result in Ortiz's removal. See 8 U.S.C. § 1227(a)(2)(B)(i) (aliens who violate controlled substance laws, except for a single violation involving possession of marijuana for personal use, are deportable); 9 U.S.C. 1229b(a)(3) (Attorney General may cancel removal of a deportable permanent resident only if permanent resident has not committed an aggravated felony); 8 U.S.C. § 1101(a)(43)(B) (illicit trafficking in a controlled substance is an aggravated felony). Ortiz then moved to withdraw his guilty pleas, his motion was denied, and this appeal followed.
Two sets of fact are in dispute. The first concerns whether Ortiz's plea counsel, Scott Gleason, told him that pleading guilty would result in mandatory deportation. Gleason states in an affidavit submitted by the Commonwealth that he properly informed his client of the immigration consequences of his pleas, including that pleading guilty would result in mandatory deportation. However, Ortiz's appellate counsel, Inna Landsman, claims in her own affidavit, which was based on her conversations with Gleason, that, while Gleason told Ortiz that a conviction would result in mandatory deportation, he never explained to Ortiz that pleading guilty and receiving straight probation would result in a conviction. According to Landsman, she learned from Ortiz's plea counsel that he did not explain to his client that pleading guilty would result in mandatory deportation. Ortiz and Dawn Upton, his child's grandmother who assisted Ortiz throughout the proceedings, assert in affidavits of their own that Gleason told them that pleading guilty with a sentence of straight probation would carry no immigration consequences. Ortiz had been informed by outside immigration counsel that "pretrial probation" would not result in his automatic deportation.
The second set of disputed facts concerns the nature of the plea negotiations. Ortiz, Upton, and Ortiz's immigration attorney, Schuyler Pisha, aver that the Commonwealth initially offered Ortiz a plea bargain, which he rejected due to its immigration consequences. These affidavits conflict over whether this deal was for five to eight years or time served, and hence whether this offer would have led to Ortiz's immediate release or required him to spend up to three more years in prison. Moreover, the affidavits of Gleason and Landsman are silent on the plea offer issue, there is no prosecutor's affidavit in the record, and the Commonwealth at oral argument did not concede that this plea offer ever took place.[2]
Discussion. Ortiz's motion to withdraw his guilty pleas is based on an ineffective assistance of counsel claim. These claims are governed by Commonwealth v. Saferian, 366 Mass. 89 (1974), which requires the defendant to demonstrate both that counsel's behavior has fallen "measurably below that which might be expected from an ordinary fallible lawyer" and that said behavior has prejudiced the defendant. Id. at 96. We evaluate these prongs in turn, in light of the Supreme Judicial Court's application of Saferian to the withdrawal of pleas with immigration consequences following the United States Supreme Court's decision in Padilla v. Kentucky, 559 U.S. 356 (2010). See, e.g., Commonwealth v. Clarke, 460 Mass. 30 (2011) ; Commonwealth v. Sylvain, 466 Mass. 422 (2013) ; Commonwealth v. DeJesus, 468 Mass. 174 (2014). We review the matter for abuse of discretion or significant error of law, and accept findings of fact if supported by the evidence. Id. at 178.
1. Counsel's assistance. To succeed in his claim, Ortiz must show that plea counsel failed to inform him of the immigration consequences of his plea "in a language that the client could comprehend." DeJesus, supra at 181. Counsel must consider the client's particular circumstances, including his or her linguistic and educational backgrounds. See ibid. at n.5 ("We do not dictate the precise language that must be employed, as each case will present different circumstances; for example, information given to an educated client who speaks English as his first language may take a different form when the client has a limited ability to comprehend or understand English").
Here, the affidavits conflict. Gleason claims that he told Ortiz that pleading guilty and receiving probation would result in mandatory deportation. The other affidavits state the opposite. Moreover, Ortiz's purported choice of three years of probation with no credit for time served-subjecting him to the possibility of ten years in jail in the event of a probation violation-over time served might well be inexplicable unless Ortiz believed that a sentence of probation would not subject him to removal. This could support Ortiz's contention that Gleason did not advise him properly. But the evidence in the record is too sparse for us to ascertain the details of the plea deal that Ortiz purportedly rejected or to assess the affiants' credibility.
The plea judge did not make any factual findings on whether Gleason properly informed Ortiz of the immigration consequences of his plea-he denied Ortiz's motion solely on prejudice grounds. As we discuss in more detail below, we think the judge's conclusion about prejudice is problematic, see infra, and will remand the case. On remand, the judge should hold an evidentiary hearing to determine the nature of Gleason's advice, bearing in mind Ortiz's lack of a high school diploma, relatively low intelligence test scores, and any other factors that may be relevant under DeJesus, to his understanding, as well as any plea negotiations between Ortiz and the Commonwealth.
2. Prejudice. The judge denied Ortiz's motion in a handwritten margin ruling stating only that the defendant's motion to withdraw his guilty pleas was to be denied because "no rational defendant would go to trial in this case given the case against the defendant and the harsh mandatory punishment." As we have noted, the judge made no findings to support this conclusion. As a result, we do not know whether the judge adequately considered the particular circumstances of this case in reaching his conclusion as our case law requires.
To show that going to trial would have been rational, a defendant must demonstrate that he had an available substantial ground of defense, that there is a reasonable probability that a different plea bargain could have been negotiated, or that there exist special circumstances to support the conclusion that the defendant would place particular emphasis on immigration consequences in deciding whether to plead guilty. Clarke, supra at 47-48. If he is to be believed, Ortiz may have met his burden with respect to all three of these prongs and, therefore, he could have shown that there is a reasonable probability that he would have gone to trial but for counsel's errors. See ibid.
First, in his affidavit, Ortiz describes his deep ties to the United States. These ties, again if the defendant is to be believed, may amount to the "special circumstances" that render a decision to go to trial rational, regardless of whether he has met either of the other two prongs. He has lived here since the age of three. All his family, including a young son, are here. He has no friends in the Dominican Republic and would have no meaningful way to start a life there. It is precisely circumstances like these in which "preserving his 'right to remain in the United States may be more important to [Ortiz] than any jail sentence.' " DeJesus, supra at 184, quoting from Padilla, supra at 368. Indeed, according to Gleason, in an uncontested and not self-serving portion of his affidavit, avoiding deportation was Ortiz's "primary motivation for going to trial" initially, even though the case against him, at that point, was "extremely strong." Thus, it appears to be undisputed that there are special circumstances, as defined by our case law, which support the reasonable possibility that Ortiz would not have pleaded guilty had he understood the immigration consequences of his actions. In other words, if after a hearing, Ortiz establishes that he was provided with erroneous advice by trial counsel, it seems as though he can also establish prejudice. Nonetheless, it is not for us to make that determination in the absence of findings by the judge, which should be made on remand.
Independently of that, Ortiz already made the decision to go to trial on these charges and it also appears that Ortiz now has a substantial ground of defense that he did not have when he decided to go to trial in the first instance, because of the revelation of Annie Dookhan's misconduct and the corresponding conclusive presumption of egregious government misconduct. See Bridgeman v. District Attorney of the Suffolk Dist., 476 Mass. 298, 305 (2017) (conclusive presumption of egregious government misconduct exists when Dookhan signed the drug certificate as primary or confirmatory chemist). Assuming there is sufficient evidence to go forward to retry the defendant, Dookhan's involvement would, at the least, provide grounds for Ortiz to impeach the Commonwealth's witnesses with respect to drug test results. While, again, the determination whether there is a reasonable probability that Ortiz would have gone to trial but for what, by hypothesis, are counsel's errors should be made by the motion judge on remand in the first instance; unless there is some reason the defendant would have made a different decision than he did in real life against a stronger case, it would seem that under this independent avenue the defendant could establish prejudice.
The Commonwealth argues that any prejudice that might have resulted from Gleason's alleged errors was cured by the plea colloquy. Even assuming a judge's colloquy could cure the failure of counsel to meet the Padilla standard, during the colloquy, the judge told Ortiz only that "a conviction of these offenses will result in your deportation, exclusion from reentry to the United States or denial of naturalization, all according to Federal Law." If Ortiz and his affiants are to be believed, Ortiz did not understand that his pleading guilty and receiving probation would result in a conviction. Hence, the colloquy would not necessarily have communicated to Ortiz, in terms that he could comprehend, that his pleas would result in mandatory deportation.
Conclusion. The order denying the defendant's motion for new trial is vacated, and the case is remanded for further proceedings consistent with this memorandum and order.
So ordered.
Vacated and remanded.

When Landsman mentioned this plea offer at the hearing on the motion to withdraw the guilty pleas, the prosecutor did not object.