AL KENANI, COMMONWEALTH vs., 100 Mass. App. Ct. 288

 
 COMMONWEALTH vs. MURTADHA AL KENANI.

100 Mass. App. Ct. 288
 June 4, 2021 - September 30, 2021

Court Below: District Court, Fitchburg Division
Present: Shin, Ditkoff, & Walsh, JJ.

 

Practice, Criminal, Plea, Assistance of counsel. Constitutional Law, Plea, Assistance of counsel. Due Process of Law, Plea, Assistance of counsel. Alien.

A District Court judge erred in denying, without holding an evidentiary hearing, a noncitizen criminal defendant's motion to withdraw his pleas of guilty, in which the defendant argued that his plea counsel was ineffective for failing to provide him with adequate advice regarding the immigration consequences of his plea, where there was no reasonable way of discerning, on the record and without an evidentiary hearing, what plea counsel's advice was and whether (given that the defendant, a refugee, had a colorable claim for deferral of removal) counsel's performance was deficient and prejudicial; therefore, this court vacated the order denying the motion and remanded the matter for further proceedings. [291-296]

COMPLAINTS received and sworn to in the Fitchburg Division of the District Court Department on October 7, 2016, and February 8, 2017. 

 A motion to withdraw pleas of guilty, filed on September 26, 2018, was heard by Christopher P. LoConto, J. 

 Barbara A. Munro for the defendant.

 Abigail H. Salois, Assistant District Attorney, for the Commonwealth.

 DITKOFF, J. The defendant, Murtadha Al Kenani, pleaded guilty to possession of cocaine with the intent to distribute, G. L. c. 94C, § 32A (a); possession of heroin with the intent to distribute, G. L. c. 94C, § 32 (a); and breaking and entering with the intent to commit a misdemeanor, G. L. c. 266, § 16A. He now appeals from the order denying his motion to withdraw his guilty pleas based on plea counsel's advice regarding immigration consequences, a matter complicated by the fact that, sixteen months after his plea, the defendant was granted protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading

 Page 289 

 Treatment or Punishment (CAT), which bars his deportation to Iraq so long as he remains likely to be subject to torture there. Concluding that, without an evidentiary hearing, the motion judge could not determine what plea counsel's advice was and whether his performance was deficient and prejudicial, we vacate the order denying the defendant's motion to withdraw his guilty pleas and remand for further proceedings.

 1. Background. a. The defendant's background. [Note 1] The defendant, a Shia Muslim, was born in Baghdad, Iraq, in 1998. As a child, he lived with his parents and his grandmother, and his father worked for the United Nations as a driver and translator. The defendant, along with his mother's family, suspected that his father secretly worked for Saddam Hussein, who was then dictator of Iraq. [Note 2] When Hussein was removed from power in 2003 by a coalition of nations including the United States, the United Kingdom, Australia, and Poland, the defendant's family began to receive threats from extremist groups. Following a brief relocation from their home in Baghdad, the defendant and his family returned to find bullet holes in their front door. Three of his siblings were kidnapped by extremists on separate occasions.

 Although the defendant's family moved around Baghdad and lived in a safe house suggested by the United Nations, the threats continued. Following his parents' divorce, the defendant's father was given custody of the defendant and his siblings. Because the defendant's father continued to work for the United Nations, the family continued to be targeted by extremist groups.

 In 2006, the defendant and his family fled to Syria, assisted by the United Nations. His father continued working for the United Nations until later that year, when he was fired because of accusations that he was an agent of Hussein. [Note 3] As Syria proved to be dangerous for the family, the defendant, along with his father, stepmother, and five of his siblings, were admitted as refugees to 

 Page 290 

the United States in September 2009. [Note 4] Subsequently, the family moved to Massachusetts. In June 2011, the defendant's status was adjusted to that of a lawful permanent resident.

 Because the defendant did not follow certain rules set out by his father and stepmother, they brutally abused him. In 2011, the defendant was severely beaten and burned, and he and his siblings were placed in the custody of the Department of Children and Families. Eventually, the children were returned to the father's custody, and the father took the defendant and some of his siblings back to Iraq, as he feared he would lose custody of the children and serve time in jail in the United States for abusing them.

 After their return to Iraq, the defendant's father fled to Lebanon because of continued threats from extremist groups, and the defendant remained with his uncle. [Note 5] Ultimately, at age fifteen, the defendant was forced to join the Iraqi military by his uncle. After the defendant and his cousin were captured by the so-called Islamic State of Iraq and the Levant (ISIS), the defendant escaped and returned to the United States. He reentered the United States as a permanent resident in March 2014.

 b. The criminal proceedings. In October 2016, police executed a search warrant for the home the defendant shared with two other men. Officers seized numerous bags of "crack" cocaine and heroin, as well as cash and drug deal paraphernalia. The defendant was charged with possession of cocaine with the intent to distribute, possession of heroin with the intent to distribute, and conspiracy to violate the drug laws, G. L. c. 94C, § 40. Plea counsel was appointed to represent the defendant on these charges.

 While those charges were pending, in December 2016, the defendant and three other men entered the home of a juvenile and took his cell phone, apparently because he owed money to one of the men. In February 2017, a complaint issued charging the defendant with breaking and entering with the intent to commit a misdemeanor, G. L. c. 266, § 16A. Plea counsel was appointed to represent the defendant on that charge as well.

 On March 1, 2017, the day for arraignment on the new charge, the defendant pleaded guilty to both charges of possession with

 Page 291 

 the intent to distribute and to the breaking and entering charge. The plea judge gave a proper immigration warning as required by G. L. c. 278, § 29D, as well as the now-discredited immigration warning that Mass. R. Crim. P. 12 (c) (3) (A) (iii) (b), as appearing in 470 Mass. 1501 (2015), once required. See Commonwealth v. Petit-Homme, 482 Mass. 775, 788 (2019). The plea judge dismissed the conspiracy charge and sentenced the defendant to one year of probation on the other three charges, to run concurrently.

 One year later, on March 9, 2018, the Department of Homeland Security initiated removal proceedings against the defendant. In July 2018, an immigration judge granted the defendant's application for deferral of removal under CAT, finding that the defendant "met his burden of establishing that it is more likely than not that he will be subject to torture in Iraq." The effect of this decision is that, so long as the defendant remains likely to be subject to torture in Iraq, he cannot be deported to that country. [Note 6]

 In September 2018, the defendant filed a motion to withdraw his guilty pleas. The motion judge, who was also the plea judge, decided the motion without holding an evidentiary hearing. He allowed the motion as to the breaking and entering offense, concluding that counsel had had "inadequate time to properly investigate this matter." [Note 7] Regarding the drug offenses, the judge determined that plea counsel had informed the defendant that "his removal or deportation was virtually certain," and thus the judge denied relief. This appeal followed.

 2. Standard of review. "A motion to withdraw a guilty plea is treated as a motion for a new trial pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001)." Commonwealth v. DeJesus, 468 Mass. 174, 178 (2014). We review a judge's decision on a motion to withdraw a guilty plea and vacate convictions "to determine whether the judge committed an abuse of . . . discretion or a significant error of law," accepting "the judge's findings of fact if supported by the evidence." Id.

 3. Ineffective assistance of counsel. a. Applicable law. Where, as here, the defendant argues that plea counsel was ineffective for failing to provide him with adequate advice regarding the immigration

 Page 292 

 consequences of his plea, "the defendant bears the burden of showing that his attorney's performance fell 'measurably below that which might be expected from an ordinary fallible lawyer,' and that he suffered prejudice because of his attorney's unprofessional errors." Commonwealth v. Lavrinenko, 473 Mass. 42, 51 (2015), quoting Commonwealth v. Clarke, 460 Mass. 30, 45 (2011). "The weight of prevailing professional norms supports the view that counsel must advise [his or] her client regarding the risk of deportation." Lavrinenko, supra, quoting Padilla v. Kentucky, 559 U.S. 356, 367 (2010).

 In general, "the terms of the relevant immigration statutes are succinct, clear, and explicit about the removal consequences for a noncitizen defendant convicted of possession with intent to distribute cocaine." DeJesus, 468 Mass. at 180-181. Possession of cocaine or heroin with the intent to distribute is an aggravated felony, and, "[p]ursuant to Federal statute, an alien 'shall, upon the order of the Attorney General [of the United States], be removed' if he or she is convicted of an aggravated felony." Id. at 181, quoting 8 U.S.C. § 1227(a)(2)(A)(iii) (2006). Where a defendant has "virtually no avenue for relief from deportation once convicted," defense counsel must "convey that, if Federal authorities apprehended the defendant, deportation would be practically inevitable." DeJesus, supra.

 The requirements of defense counsel's advice are not so indisputable, however, where the defendant does have an avenue for relief. See DeJesus, 468 Mass. at 180 (in discussion of holding in Padilla, 559 U.S. at 368, "recognizing that there undoubtedly will be situations in which the deportation consequences of a particular plea are unclear or uncertain, and counsel's duty more limited"). "[A]lthough the discretionary avenues to avoiding deportation are extremely limited, there may still be individuals who could avail themselves of those avenues. For example, a noncitizen who is convicted of an aggravated felony and shows a likelihood of torture upon deportation may be granted 'withholding of removal, 8 U.S.C. § 1231(b)(3)(A), and deferral of removal under [CAT].'" DeJesus, supra at 181 n.5, quoting Moncrieffe v. Holder, 569 U.S. 184, 187 n.1 (2013).

"These forms of relief require the noncitizen to show a greater likelihood of persecution or torture at home than is necessary for asylum, but the Attorney General has no discretion to deny relief to a noncitizen who establishes his

 Page 293 

 eligibility. A conviction of an aggravated felony has no effect on CAT eligibility, but will render a noncitizen ineligible for withholding of removal if he 'has been sentenced to an aggregate term of imprisonment of at least 5 years' for any aggravated felonies." 

Moncrieffe, supra, quoting 8 U.S.C. § 1231(b)(3)(B).

 b. Advice given by plea counsel. Here, the motion judge determined that the defendant could not demonstrate prejudice because he "was told by his attorney, and by the court, that his removal or deportation was virtually certain." This finding is not based any testimony or an affidavit by an individual with personal knowledge. Rather, this finding is supported solely by the affidavit of appellate counsel recounting a telephone conversation with plea counsel. According to appellate counsel, plea counsel stated that "[h]e told [the defendant] that if he pled, he was 'outta here.'"

 Some further background is in order. On the drug charges, the defendant was released on bail of $1,500. On the day of the plea, the Commonwealth moved to revoke his bail on the drug charges in light of the new breaking and entering charge. As a result, on the morning of the plea, the judge ordered the defendant taken into custody. According to plea counsel's statement to appellate counsel, the "outta here" statement was made "either in the holding cell or upstairs." [Note 8]

 The motion judge treated that statement as advice that the defendant's "removal or deportation was virtually certain." The problem is that there is no way of discerning from this recounting of a telephone call from plea counsel whether by "outta here" plea counsel meant that the defendant would be out of custody and released on probation, or if he meant that the defendant would be out of the country. More important, there is no way of discerning how the defendant would have taken this statement. On this record, the motion judge could not reasonably find that plea counsel informed the defendant that his deportation would be virtually certain if he accepted the plea agreement without holding an evidentiary hearing to explore the context and meaning of this statement. See Commonwealth v. Martinez, 86 Mass. App. Ct. 545, 550 (2014).

 Page 294 

 c. Proper advice on immigration consequences. Even if it is eventually determined that the defendant was not advised that deportation was virtually certain, the record does not reveal whether competent counsel would have given such advice. Although conviction of possession of heroin or cocaine with the intent to distribute would result in deportation for most defendants, see DeJesus, 468 Mass. at 180-181; 8 U.S.C. § 1101(a)(43)(B), the defendant here came to the United States as a refugee and had a colorable claim for deferral of removal under CAT, which he was ultimately granted in July 2018. Accordingly, with the benefit of hindsight, we know that it is not virtually certain that the defendant will be deported. Cf. Commonwealth v. Nguyen, 89 Mass. App. Ct. 904, 904-905 & n.5 (2016) (as defendant enjoyed "protected status pursuant to the United States-Vietnam repatriation pact of 2008" and, therefore, could not "be deported back to Vietnam," advice that his pleas would mean "that he presumptively would be deported" would have been "inaccurate").

 Effectiveness of counsel, however, is not determined "from the vantage point of hindsight." Commonwealth v. Bonnett, 472 Mass. 827, 832 (2015), quoting Commonwealth v. Johnson, 435 Mass. 113, 133-134 (2001). Accord Commonwealth v. Salinger, 76 Mass. App. Ct. 776, 783 (2010). Unfortunately, once we eschew the benefit of hindsight, the proper advice is opaque. The record does not reflect whether the evidence necessary for the CAT claim was substantially available on the date of the defendant's pleas. The record does not reveal whether the defendant was very likely to be granted deferral of removal under CAT or whether the defendant's success was an unexpected boon. That the defendant was ultimately granted deferral of removal does not tell us how likely he was to receive it at the time of the pleas. The availability and likelihood of receiving CAT protection, as that existed at the time of the pleas, will govern whether the proper advice was that the defendant was virtually certain to be deported, that he was unlikely to be deported, or something in between.

 For this reason, Nguyen may or may not be controlling. There, it was undisputed that the defendant came to the United States from Vietnam prior to 1995 and was a lawful permanent resident, and therefore he "[could not] be deported back to Vietnam." Nguyen, 89 Mass. App. Ct. at 905. The plea there occurred several years after the United States-Vietnam repatriation pact was signed, and thus this was as true on the day of the plea as at

 Page 295 

 the time of appeal. See id. at 904-905 & n.3. Unless it is determined on remand that, at the time of the plea, it was evident that deportation was impossible because of CAT, Nguyen is distinguishable.

 To be sure, plea counsel also has a duty to make a reasonable inquiry into the defendant's immigration status. "It is especially important that a criminal defense attorney learn whether his or her client was admitted into this country as a refugee." Lavrinenko, 473 Mass. at 53. This is important because knowledge that a defendant was admitted as a refugee would lead counsel to conduct further research "to learn what [counsel] need[s] to know to advise his [or her] client competently regarding the immigration consequences of a guilty plea." Id. at 54. "Therefore, the failure of a criminal defense attorney to make a reasonable inquiry of the client regarding his or her citizenship and immigration status is sufficient to satisfy the deficient performance prong of the ineffective assistance analysis." Id. at 53. See Padilla, 559 U.S. at 370 n.11 ("were a defendant's lawyer to know that a particular offense would result in the client's deportation and that, upon deportation, the client and his family might well be killed due to circumstances in the client's home country, any decent attorney would inform the client of the consequences of his plea").

 If, as the defendant avers, plea counsel "had no real history on [the defendant], other than he was from Iraq and had a green card," counsel's performance in investigating the defendant's immigration status was deficient. As the motion judge made no finding on this assertion, this may be explored further on remand. Nonetheless, even if the motion judge determines that plea counsel's performance was deficient in this regard, the defendant must show that the actual advice plea counsel gave was prejudicial to obtain relief. See Commonwealth v. Balthazar, 86 Mass. App. Ct. 438, 440 (2014) ("the defendant must show that counsel failed to adequately advise the defendant of the immigration consequences of his pleas and, as a result, the defendant was prejudiced").

 d. Prejudice. The issue of prejudice is clouded by the same uncertainties. "[W]here a defendant claims that counsel's ineffective assistance induced him to plead guilty, the defendant must demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" DeJesus, 468 Mass. at 182-183, quoting Clarke, 460 Mass. at 47. First, "the defendant must aver that to be

 Page 296 

 the case." Clarke, supra at 47. Second, the defendant "must 'convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" Id., quoting Padilla, 559 U.S. at 372. To prove this, the defendant must show either "that (1) he had an 'available, substantial ground of defence,' Commonwealth v. Saferian, [ 366 Mass. 89,] 96 [(1974)], that would have been pursued if he had been correctly advised of the dire immigration consequences attendant to accepting the plea bargain; (2) there is a reasonable probability that a different plea bargain (absent such consequences) could have been negotiated at the time; or (3) the presence of 'special circumstances' that support the conclusion that he placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty" (footnote omitted). Clarke, supra at 47-48, quoting Hill v. Lockhart, 474 U.S. 52, 60 (1985). "If the defendant does establish at least one of the Clarke factors, then the judge must move to the second step and evaluate whether, under the totality of the circumstances, there is a reasonable probability that a reasonable person in the defendant's circumstances would have gone to trial if given constitutionally effective advice." Commonwealth v. Lys, 481 Mass. 1, 7-8 (2018). [Note 9]

 Here, the defendant averred that he "would not have agreed [to the plea] if [he] knew [he] would definitely be deported." That would be an adequate averment if, in fact, the proper advice at the time of the plea was that he would definitely be deported. If the proper advice at the time of the plea was that the defendant had a lesser chance of being deported, the defendant has not averred (though presumably he may do so on remand) that he would not have pleaded guilty if given proper advice about his chance of deportation. See Lavrinenko, 473 Mass. at 55, quoting Clarke, 460 Mass. at 47 (defendant must show "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). This conundrum also may be addressed on remand.

 4. Conclusion. We vacate the order denying the defendant's 

 Page 297 

motion to withdraw his guilty pleas and remand the case for further proceedings consistent with this opinion.

So ordered. 

FOOTNOTES
[Note 1] We take the facts regarding the defendant's background from the decision of the immigration judge on the defendant's CAT claim. 

[Note 2] The defendant believed that Hussein was a very strict military leader, but he observed that his father was always protected under Hussein's regime. In addition, the defendant's uncles viewed Hussein as "their hero." 

[Note 3] Although captured in December 2003, Hussein was not executed until December 30, 2006. 

[Note 4] "[A]n 'admission' is defined as 'the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.'" Sanchez v. Mayorkas, 141 S. Ct. 1809, 1811 (2021), quoting 8 U.S.C. § 1101(a)(13)(A). 

[Note 5] The defendant's uncle also physically abused him. 

[Note 6] Although, in theory, the defendant could be deported to some other country, see 8 U.S.C. § 1231(b)(1)(C)(iv); Jama v. Immigration & Customs Enforcement, 543 U.S. 335 (2005), the defendant presents no evidence that there is a realistic possibility of this occurring. 

[Note 7] The Commonwealth did not appeal. 

[Note 8] In his affidavit, the defendant placed this conversation in the court lockup, but his version was very different. The defendant states that plea counsel "told [him] because it was probation, there wouldn't be any problem with deportation" unless he violated probation. 

[Note 9] If the defendant's assertions are credited, the torment that he suffered in Iraq would amount to "the presence of 'special circumstances' that support the conclusion that he placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty." Clarke, 460 Mass. at 47-48, quoting Hill, 474 U.S. at 60. "Because . . . persecution may result in many forms of harm or suffering, including potentially death or serious injury, the avoidance of deportation may be of immense importance to a refugee." Lavrinenko, 473 Mass. at 53. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.