NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12040

COMMONWEALTH  vs.  FRANK VALDEZ.[1]


Middlesex.     April 4, 2016. - August 17, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.[2]


Practice, Criminal, Plea, Presumptions and burden of
     proof.  Alien.


Indictment found and returned in the Superior Court
Department on September 20, 1988.

A motion to withdraw a guilty plea, filed on November 4,
2013, was considered by Kathe M. Tuttman, J., and a motion for
reconsideration was also considered by her.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Scott W. Kramer for the defendant.
Jamie Michael Charles, Assistant District Attorney, for the
Commonwealth.

---

[1] Also known as Franklin Falcon and Franklin Falcone.

[2] Justice Cordy participated in the deliberation on this
case and authored the concurring opinion prior to his
retirement.  Justices Spina and Duffly participated in the
deliberation on this case prior to their retirements.

Jennifer Klein & Wendy S. Wayne, Committee for Public
Counsel Services, for Committee for Public Counsel Services,
amicus curiae, submitted a brief.


GANTS, C.J.  Under G. L. c. 278, § 29D, where a judge fails
to advise a defendant during the plea colloquy that conviction
may have the consequence of exclusion from admission to the
United States, the conviction must be vacated upon motion of the
defendant if the defendant shows that his or her conviction "may
have" that consequence.  The issue on appeal is what the
defendant must show to establish that his conviction "may have"
the consequence of exclusion from admission to the United
States.  We conclude that a defendant satisfies this burden by
showing (1) that he has a bona fide desire to leave the country
and reenter, and (2) that, if the defendant were to do so, there
would be a substantial risk that he or she would be excluded
from admission under Federal immigration law because of his or
her conviction.  Because we conclude that the defendant has met
this burden, we vacate the defendant's conviction and remand the
case for a new trial.[3]

Background.  The defendant was born in the Dominican
Republic and is a citizen of that country.  In 1985, he was
admitted to the United States as a lawful permanent resident

---

[3] We acknowledge the amicus brief submitted by the
Immigration Impact Unit of the Committee for Public Counsel
Services.

alien. In January, 1989, he pleaded guilty in the Superior Court to an indictment alleging larceny of a motor vehicle, in violation of G. L. c. 266, § 28, and was sentenced to a prison term of five years at the Massachusetts Correctional Institution at Concord.

The defendant is now a resident of Connecticut and owns his own business selling automobiles. Since 1997, he has been in a relationship with a citizen of the United States, with whom he has three children. No immigration proceedings have been commenced against the defendant by Federal authorities.

At some time before September 27, 2013, the defendant retained an immigration attorney, Nareg Kandilian, to advise him regarding his desire to become a United States citizen and to travel outside the United States. He told Kandilian that he wished to see friends and family in the Dominican Republic that he had not seen in many years, but feared that, if he were to leave the United States, he would be deemed inadmissible and placed into removal proceedings upon his attempt to reenter. Kandilian reviewed the docket information in this case and the defendant's board of probation record. The attorney concluded that, because larceny of a motor vehicle is a "crime involving moral turpitude" punishable by imprisonment for more than one year, if the defendant were to travel outside the United States and attempt to reenter, he would be found inadmissible under 8

U.S.C. § 1182(a)(2)(A)(i)(I) (2012), and removal proceedings would be initiated against him.[4]  The attorney also concluded that the defendant was convicted of an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G) (2012) and is deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) (2012).  The attorney further concluded that the defendant is deportable under 8 U.S.C. § 1227(a)(2)(A)(i), because the defendant's offense is a crime involving moral turpitude that was committed within five years of his admission to the United States.

To avoid these consequences, the defendant, through counsel, moved to withdraw the guilty plea and vacate the conviction, claiming that the judge accepted his plea without advising that his conviction "may have consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States," as required by G. L. c. 278, § 29D.  In support of his motion, the defendant filed affidavits from Kandilian and himself, and a memorandum dated March 2, 2011, from John Morton, Director of United States Immigration and Customs Enforcement (ICE), to all ICE employees ("Morton memorandum").  In the

---

[4] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 unified exclusion and deportation proceedings under a single system of "removal proceedings."  See Pub. L. No. 104-208, 110 Stat. 3009 (1996); 12 U.S.C. § 1229a (2012).  The term "exclusion" is no longer used by immigration authorities but is instead referred to as "inadmissibility."

memorandum, Morton declared that ICE "only has resources to remove approximately 400,000 aliens per year, less than [four] percent of the estimated illegal alien population in the United States," and therefore "must prioritize the use of its enforcement personnel, detention space, and removal resources to ensure that the removals the agency does conduct promote the agency's highest enforcement priorities, namely national security, public safety, and border security."  He identified "aliens convicted of crimes, with a particular emphasis on violent criminals, felons, and repeat offenders," among those given the highest priority for removal.  "For purposes of prioritizing the removal of aliens convicted of crimes," he directed ICE personnel to refer to offense levels, "with Level 1 and Level 2 offenders receiving principal attention."  Level 1 offenders include "aliens convicted of 'aggravated felonies,' as defined in [8 U.S.C. § 1101(a)(43)]."  Morton also emphasized the need "for ICE employees to exercise sound judgment and discretion consistent with these priorities," and noted that "[p]articular care should be given when dealing with lawful permanent residents, juveniles, and the immediate family members of [United States] citizens."

In support of its opposition to the motion, the Commonwealth filed an affidavit from the then retired plea judge, who stated that he "invariably" informed a defendant that

"the guilty plea might lead to his or her deportation or prevent him or her from becoming a naturalized citizen," and that he would have given the defendant these warnings in accordance with his invariable practice.  He also stated, "At some point after 1988, I added a warning that the guilty plea might also prevent reentry into the United States, but I cannot recall precisely when I did so."  He noted that he reviewed the plea colloquy he conducted on November 16, 1988, in a different case involving a different defendant, and that colloquy included the deportation and naturalization warnings, but not the warning regarding reentry.

The motion judge, based on the affidavits alone, found that the Commonwealth had met its burden of showing that the defendant had been properly advised at the plea hearing that his guilty plea could subject him to deportation or denial of naturalization, but had not met its burden of showing that he had been advised that his plea could subject him to exclusion from admission to the United States should he leave the country and attempt to reenter.  The judge nonetheless denied the motion because, citing Commonwealth v. Grannum, 457 Mass. 128 (2010), she found that the defendant "has not established that he would be subject to an express written policy of exclusion should he choose to leave the United States and desire to re-enter," and therefore "has shown no more than a hypothetical risk" of

exclusion.  The defendant filed a motion for reconsideration, which the judge also denied; the defendant then timely appealed from both orders.

The Appeals Court affirmed in a published opinion, but rested its decision on a different ground.  Commonwealth v. Valdez, 88 Mass. App. Ct. 332 (2015).  The court agreed with the motion judge that the Commonwealth had failed to prove that the defendant received the required warning regarding exclusion from admission to the United States.  Id. at 332.  It recognized that the defendant had been convicted of a crime involving moral turpitude and "very likely would be excluded from reentry if he travels outside the United States."  Id. at 336.  It also recognized that, because he had been convicted of an aggravated felony, he is deportable under 8 U.S.C. § 1227(a)(2)(A)(iii).  Id.  But the court concluded that the defendant had failed to meet his burden of showing that "he faces the consequence of exclusion," id. at 335, because he "has not been excluded from the United States," id. at 332; "there is no pending proceeding to exclude him from the United States," id. at 338; and there is no "pending deportation proceeding . . . that would increase the likelihood that he would be excluded."  Id.  We granted the defendant's application for further appellate review.

Discussion.  When the Legislature enacted St. 1978, c. 383, in 1978, inserting § 29D into chapter 278 of the General Laws, it took great pains to ensure that defendants were informed that their plea of guilty, admission to sufficient facts, or plea of nolo contendere may have adverse immigration consequences. See Commonwealth v. Villalobos, 437 Mass. 797, 805 (2002) (entire purpose of statute is to ensure that defendants entering pleas are made aware of potential for adverse immigration consequences).[5]  The Legislature set forth in the statute the

---

[5]  The full text of G. L. c. 278, § 29D, as inserted by St. 1978, c. 383, is as follows:

"The [c]ourt shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the [c]ourt advises him of the following:  'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.'  The defendant shall not be required at the time of the plea to disclose his or her legal status in the United States to the court.

"If the [c]ourt fails so to advise the defendant, and he later at any time shows that his plea and conviction may have one of the enumerated consequences, the [c]ourt, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of 'not guilty.'  Absent a record that the [c]ourt provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement."

precise language of the warning that the judge was to give a defendant before accepting a plea:  "If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States."  G. L. c. 278, § 29D.  See Commonwealth v. Soto, 431 Mass. 340, 342 (2000) ("The Legislature has put the three required warnings in quotation marks, and each of them is required to be given so that a person pleading guilty knows exactly what immigration consequences his or her guilty plea may have").  Section 29D provided that, should the judge fail adequately to give this warning, and should the defendant subsequently move to vacate the plea, the judge "shall vacate the judgment," provided that the defendant "at any time shows that his plea and conviction may have one of the enumerated consequences."  Id.  By including the words, "at any time," the Legislature made clear that there was no limitation in time to bringing a motion to vacate the plea, even though the passage of time might mean that the tape recording, transcript, and other records of the plea colloquy are no longer available through no

_____

The statute was subsequently amended in 1996 and 2004, after the guilty plea in this case, so we refer only to the original language of the statute, but our holding in this case would be the same under the current language.  See St. 1996, c. 450, § 254; St. 2004, c. 225, § 1.

fault of the Commonwealth, and that no one may recall what was said. See Grannum, 457 Mass. at 132-133 ("Records may be unavailable because they have been disposed of pursuant to court rules authorizing the destruction of old records, see S.J.C. Rule 1:12, as appearing in 382 Mass. 717 [1981], and reconstruction may be impossible because of the death, retirement, unavailability, or lack of recollection of the participants in the plea hearing"). The Legislature made equally clear that the presumption of regularity that we apply in motions to vacate a guilty plea under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), see Commonwealth v. Lopez, 426 Mass. 657, 662 (1998), does not apply where a defendant moves to vacate a plea under § 29D, because the statute provided that "the defendant shall be presumed not to have received the required advisement" where there is no record that the judge did so. See Grannum, supra at 134 ("the presumption of regularity that warnings were given cannot apply in the face of the specific language of G. L. c. 278, § 29D").

Where, as here, the Commonwealth failed to meet its burden of showing that the defendant was advised that his guilty plea may have the consequence of "exclusion from admission to the United States," § 29D mandates that the defendant be permitted to withdraw his plea, provided the defendant shows that his plea "may have" that consequence. "We construe this requirement to

mean that a defendant must demonstrate more than a hypothetical risk of such a consequence, but that he actually faces the prospect of its occurring."  Commonwealth v. Berthold, 441 Mass. 183, 185 (2004).  Where the immigration consequence at issue is deportation rather than exclusion from admission, we have said that, to satisfy this burden, the defendant must show more than that, "if the Federal government were to initiate deportation proceedings, the defendant almost inevitably would be deported."  Grannum, 457 Mass. at 136.  See Commonwealth v. Rzepphiewski, 431 Mass. 48, 50 n.6 (2000).  Rather, "[w]here the defendant claims that he faces a risk of deportation, we construe the statute to require that relief be available only where the defendant shows either that the Federal government has taken some step toward deporting him or that its express written policy calls for the initiation of deportation proceedings against him."  Grannum, supra.

This standard is appropriate where the immigration consequence is deportation because, as the Morton memorandum makes clear, far more noncitizens are deportable than ICE has the resources to deport, so the risk of deportation is hypothetical even for a noncitizen who is deportable until there is evidence that ICE has decided or will decide to initiate deportation proceedings.  But this standard is not appropriate where the immigration consequence is exclusion from admission to

the United States because, where a defendant's conviction would render him or her inadmissible under Federal immigration law, exclusion from admission is far more than a hypothetical risk if the defendant were to leave the United States.

Every noncitizen who has left the United States and seeks admission at a United States port of entry "must present whatever documents are required and must establish to the satisfaction of the inspecting officer that the alien is not subject to removal under the immigration laws . . . and is entitled, under all of the applicable provisions of the immigration laws . . . , to enter the United States."  8 C.F.R. § 235.1(f) (2013).  As stated, under 8 U.S.C. § 1182(a)(2)(A)(i)(I), subject to certain exceptions, "any alien convicted of . . . a crime involving moral turpitude . . . is inadmissible," and therefore ineligible to be admitted to the United States.

To ensure that all noncitizens who are not eligible for admission because of prior criminal convictions are identified at the time of inspection, United States Customs and Border Protection (CBP) obtains identifying information for all individuals arriving by sea or air from outside the United States prior to arrival, see 8 U.S.C. § 1221(a) (2012), and screens that information against a variety of law enforcement databases, including the National Crime Information Center.  See

8 U.S.C. § 1226(d) (2012) (United States Attorney General shall "maintain a current record of aliens who have been convicted of an aggravated felony," which shall be made available to inspectors at ports of entry); United States Department of Homeland Security, Privacy Impact Assessment for the TECS System: CBP Primary and Secondary Processing (Dec. 22, 2010). At the time of inspection, if the examining officer determines that the noncitizen seeking admission "is not clearly and beyond a doubt entitled to be admitted, [he or she] shall be detained for [removal proceedings]." 8 U.S.C. § 1225(b)(2)(A) (2012).[6] See also 8 U.S.C. § 1226(c)(1)(A) (2012) (individual deemed inadmissible under 8 U.S.C. § 1182[a][2] "shall" be detained); 8 C.F.R. § 235.3(b)(5)(ii) (2013) (where noncitizen with lawful permanent resident status seeks admission but "appears to be inadmissible, the immigration officer may initiate removal proceedings against [him or her]").

An immigration judge will preside over the removal proceedings, see 8 U.S.C. § 1229a(a)(1) (2012), at which the noncitizen has the burden of establishing that he or she "is clearly and beyond doubt entitled to be admitted and is not inadmissible under [8 U.S.C. § 1182]". 8 U.S.C.

---

[6] A noncitizen returning to the United States who is lawfully admitted for permanent residence is regarded as seeking admission if he or she has committed an offense identified in 8 U.S.C. § 1182(a)(2) (2012), which includes crimes involving moral turpitude. See 8 U.S.C. § 1101(a)(13)(C)(v) (2012).

§ 1229a(c)(2)(A) (2012).  Under these circumstances, it is virtually inevitable that an individual who is ineligible for admission based on a criminal conviction under 8 U.S.C. § 1182(a)(2) will be deemed inadmissible to the United States upon arrival, and ordered removed by an immigration judge pursuant to 8 U.S.C. § 1229a.

The Commonwealth argues, as the Appeals Court held, that a defendant can only satisfy his or her burden of demonstrating "more than a hypothetical risk" of exclusion by showing that there is a pending proceeding to exclude him from admission to the United States.  In practice, this would mean that the defendant must leave the country and be denied readmission, as there can be no pending proceeding to exclude an applicant from admission to the United States unless the applicant has filed the required documents with Federal authorities upon attempting to enter the country.  See 8 U.S.C. § 1181(a) (2012) ("no immigrant shall be admitted into the United States unless <u>at the time of application for admission</u>" he or she presents valid documents [emphasis added]).  We see two problems with such an interpretation of G. L. c. 278, § 29D.

First, it would be contrary to the language of § 29D, which at the time of the defendant's plea provided that a defendant's conviction shall be vacated upon a showing by the defendant "that his plea and conviction <u>may have</u> one of the enumerated

consequences" (emphasis added).  We interpreted this original version of the statute to mean that a defendant could attack his or her conviction only before the defendant suffered the immigration consequence, and therefore held that the remedy was not available to a defendant who had already been deported. See Commonwealth v. Pryce, 429 Mass. 556, 559 (1999).[7]  Under our interpretation of § 29D in Pryce, a defendant could not attack his or her conviction if he or she had already been excluded from admission to the United States, but under the Commonwealth's interpretation, a defendant could not attack his or her conviction until he or she had been excluded from admission to the United States.[8]  The Commonwealth's interpretation would transform the words "may have" into "have had," which this court declined to do in Pryce, supra ("The concept of attacking the conviction after deportation has taken

---

[7] In 2004, the Legislature amended G. L. c. 278, § 29D, to make clear that the remedy of vacatur of the conviction is available to defendant who "may have or has had one of the enumerated consequences, even if the defendant has already been deported from the United States."  St. 2004, c. 225, § 1.

[8] In Commonwealth v. Soto, 431 Mass. 340, 341-342 (2000), we ordered that a defendant's guilty plea be vacated because the judge had not advised the defendant that his conviction could result in his exclusion from admission to the United States where the Immigration and Naturalization Service "initiated proceedings to remove the defendant from the United States -- he was in Puerto Rico at the time -- because of his prior narcotics conviction."  We do not opine whether this holding would have been different under Commonwealth v. Pryce, 429 Mass. 556, 559 (1999), had he not been in a territory of the United States when he was denied admission.

place is missing from the statute.  We perceive this to be more than a semantic lapse").

Second, such an interpretation would be contrary to the legislative spirit of § 29D, because it would effectively deny a defendant a remedy where he or she was convicted without being warned of the immigration consequence of exclusion from admission to the United States.  Few, if any, defendants whose conviction would render them inadmissible upon reentry would dare to leave the country, so they could show no pending proceeding, and therefore could not show that their conviction "may have" the consequence of exclusion from admission.  For those foolish or brave enough to leave the country in these circumstances, it would be extremely difficult for them to challenge their prior conviction after being found inadmissible. Where a noncitizen is deemed inadmissible because of conviction of a crime of moral turpitude and for that reason placed in removal proceedings, he or she is subject to mandatory detention.  See 8 U.S.C. § 1226(c)(1)(a).  Because immigration proceedings against those who are detained move quickly, the defendant is likely to be removed before a postconviction motion can be adjudicated.[9]  The Commonwealth points to no statute or

_____

[9] The average length of detention for those removed is twenty-seven days.  See Transactional Records Access Clearinghouse, Legal Noncitizens Receive Longest ICE Detention

precedent that requires the suspension of Federal removal proceedings while a postconviction motion is pending.  Thus, requiring a noncitizen defendant to wait until he or she is found inadmissible before filing a motion under § 29D would greatly diminish the practical availability of the remedy provided by § 29D for those at risk of exclusion from admission to the United States.

We hold that, where a defendant has not received the required exclusion from admission warning under § 29D, he or she satisfies the burden of showing that his or her conviction "may have" the consequence of exclusion from admission to the United States by showing (1) that he has a bona fide desire to leave the country and reenter, and (2) that, if the defendant were to do so, there would be a substantial risk that he or she would be excluded from admission under Federal immigration law because of his or her conviction.  Here, where the motion judge was not the plea judge and did not conduct an evidentiary hearing, we are in the same position as the motion judge to make findings.  See Commonwealth v. Sullivan, 469 Mass. 340, 351 (2014).  We conclude from the record that the defendant has satisfied both requirements for relief.

---

(June 3, 2013), http://trac.syr.edu/immigration/reports/321/ [https://perma.cc/S33G-CPF3].

First, the defendant has met his burden of showing a bona fide desire to travel outside the United States where he told his immigration attorney that he wished to "travel outside of the United States and to his home country, the Dominican Republic, to visit with friends and family who he has not seen in many years." We deem this a modest burden, because we recognize that it is natural for an immigrant who has left family and friends behind to wish to see them again. We also infer the sincerity of his desire to see family and friends because he spoke of it to his immigration attorney before the motion was filed, and therefore could not have known that the judge would later find that he had been warned of all the immigration risks except exclusion from admission to the United States, which is the risk relevant to his desire to leave the United States.[10]

Second, there is a substantial risk that, if the defendant were to leave the country, he would be excluded from admission to the United States under Federal immigration law and placed in removal proceedings as a result of his 1989 conviction. The Federal statute governing the inadmissibility of noncitizens, 8

_____

[10] Although the affidavit offered by the defendant's immigration attorney here provided support for the defendant's showing of a bona fide desire to travel outside the United States, we do not suggest that an affidavit from an immigration attorney is necessary to enable a defendant to make the required showing.

U.S.C. § 1182(a)(2), does not identify the crimes that qualify as "involving moral turpitude."  To determine whether a crime involves moral turpitude, courts look to the "inherent nature of the crime of conviction, as defined in the criminal statute." Mejia v. Holder, 756 F.3d 64, 68 (1st Cir. 2014), quoting Idy v. Holder, 674 F.3d 111, 118 (1st Cir. 2012).  We are not aware of any case that has specifically declared whether larceny of a motor vehicle, in violation of G. L. c. 266, § 28, is a crime involving moral turpitude, but it is likely that the immigration authorities would conclude that it is.

Under Massachusetts law, to convict a defendant of this crime, the Commonwealth must prove that the defendant took a motor vehicle owned by another with "an intent permanently to deprive the rightful owner of the possession of the motor vehicle."  Commonwealth v. Giannino, 371 Mass. 700, 703 (1977).  See Commonwealth v. Moore, 36 Mass. App. Ct. 455, 457 (1994).  Because the crime of larceny of a motor vehicle has a required element that the defendant intends permanently to deprive the rightful owner of possession, the immigration authorities are likely to find that the crime involves moral turpitude.  See Almanza-Arenas v. Holder, 771 F.3d 1184, 1190 (9th Cir. 2014)  (permanent taking of motor vehicle, but not temporary taking, is crime involving moral turpitude); Mejia, supra (same); Hashish v. Gonzalez, 442 F.3d 572, 576 (7th Cir.), cert.

denied, 549 U.S. 995 (2006) ("'theft' is a crime of moral turpitude").  Once found to have committed a crime involving moral turpitude, the defendant would be ineligible for admission under 8 U.S.C. § 1182(a)(2)(A)(i)(I).[11]

In addition, the defendant's conviction would be deemed an aggravated felony because it is a "theft offense" for which he was imprisoned for more than one year.  See 8 U.S.C. § 1101(a)(43)(G).  His conviction of an aggravated felony renders him ineligible for certain forms of relief in removal proceedings in immigration court.  See, e.g., 8 U.S.C. § 1229b(a) (2012) (cancellation of removal not available if noncitizen has been convicted of aggravated felony).

Conclusion.  Because the defendant has met his burden of showing that his conviction "may have" the consequence of exclusion from admission to the United States, and he was not warned of this consequence during his plea colloquy, we conclude that his conviction must be vacated in accordance with § 29D. We therefore reverse the order of the judge denying the defendant's motion to vacate judgment and remand the case for a new trial.

So ordered.

---

[11] The exceptions to the general rule that "any alien convicted of . . . a crime involving moral turpitude" is inadmissible do not apply here based on the information available in the record.  See 8 U.S.C. § 1182(a)(2)(A)(i)(I); 8 U.S.C. § 1182(a)(2)(A)(ii).

CORDY, J. (concurring).  I agree that the wording of G. L. c. 278, § 29D, dictates the outcome reached by the court.  I concur only to point out the anomalous result created by phrasing of the statute.  Here, more than twenty-five years after his plea of guilty, and long after the records of precisely what occurred at the plea hearing had been duly destroyed pursuant to court rule, the defendant is able to undo his conviction because he wishes to make a trip to visit old friends and family in his native country, and might well be denied reentry to the United States, in light of the conviction -- all because, not surprisingly, the Commonwealth cannot clearly prove that when he pleaded guilty in 1989 he was advised that such a denial of reentry might someday occur as a result.

If, on the other hand, deportation proceedings had been commenced against the defendant at some point over the last twenty-five years based on the same conviction, such a wiping clean of the criminal record would not have been available to him, given that the Commonwealth was able to obtain an affidavit regarding the distant memory of a still living retired judge that he was certain he would have advised the defendant in 1989 that deportation (as well as the denial of naturalization) might be a consequence of the conviction.  Of course, once the conviction is vacated due to the travel reentry concern, neither

a deportation nor a denial of naturalization could occur as a result of it.

The present case involved only the crime of larceny of a motor vehicle, but the statute applies to all crimes against persons and property to which a person might have pleaded guilty any time after 1978, when the statute was enacted.  As is evident in this case, there is no time limit as to when a challenge can be brought -- and a plea of guilty vacated -- even though the plea may have been voluntary and fully supported by the facts.  Further, contrary to the ordinary presumption of regularity in court proceedings that is applied in all other motions to vacate guilty pleas where, because of the passage of time, the record of the proceeding is not fully available, the statute creates the opposite presumption when immigration warnings are at issue.

If this is indeed what the Legislature intends, so be it.