KAFKER, J.
**775 *65 The defendant, Denver Petit-Homme, currently faces deportation based in part upon an admission to sufficient facts for a finding of guilty on two counts of assault by means of a dangerous weapon. During the plea colloquy conducted in connection with that admission, the judge warned the defendant about **776 certain "practically inevitable" immigration consequences that would arise if the defendant did not have United States citizenship and "if ... the crime admitted to is one that presumptively mandates removal from the United States" (emphasis added), as required by Mass. R. Crim. P. 12 (c) (3) (A) (iii) (b), as appearing in 470 Mass. 1501 (2015). The judge neglected, however, to recite the following, more general words of warning prescribed by G. L. c. 278, § 29D :
"If you are not a citizen of the United States, you are hereby advised that the acceptance by this court of your plea of guilty, plea of nolo contendere, or admission to sufficient facts may have consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States."
The same statute requiring oral delivery of this warning at all criminal plea colloquies further provides:
"If the court fails so to advise the defendant, and he later at any time shows that his plea and conviction may have or has had one of the enumerated consequences, ... the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty, plea of nolo contendere, or admission of sufficient facts, and enter a plea of not guilty."
Id. Approximately one and one-half years after the plea colloquy, following the commencement of deportation proceedings, the defendant unsuccessfully moved to withdraw the admission based on the contention that the judge failed to provide the statutory warning.
The defendant appealed, and we granted his subsequent application for direct appellate review to consider whether the immigration consequences warning articulated by the plea judge during the colloquy sufficed "so to advise" the defendant, as required by G. L. c. 278, § 29D. The defendant argues that it did not, and that reversal is thus required where the challenged admission led to the pending removal proceedings. We agree. Given the complexity of Federal immigration law, the offense-specific warning provided to the defendant in the instant case is confusing, and it is neither equivalent to, nor an adequate substitute for, the more general advisory that G. L. c. 278, § 29D, entitles every criminal **777 defendant to receive. The order denying the defendant's motion to withdraw his plea is therefore reversed, and the matter is remanded for further proceedings consistent with this opinion.[1] *66 Facts and procedural history. On August 26, 2016, a criminal complaint issued from the Dorchester Division of the Boston Municipal Court Department, charging the defendant with two counts of assault by means of a dangerous weapon and two counts of making a threat to commit a crime. The charges stemmed from an incident that occurred on August 6, 2016, in which the defendant approached two men, called their attention to a gun in the waistband of the defendant's pants, and threatened to shoot them.
On January 10, 2017, the defendant tendered an admission to sufficient facts for a finding of guilty on all charges (admission). During the oral colloquy that the judge conducted prior to accepting the defendant's admission, the judge stated, substantially as required by Mass. R. Crim. P. 12 (c) (3) (A) (iii) (b) :
"[I]f you are not a citizen of the United States and the crime admitted to is one that presumptively mandates removal from the United States, and the federal officials decide to seek removal, acceptance by this Court of your admission will make it practically inevitable that this admission will result in deportation, exclusion from admission or denial of naturalization under the laws of the United States."
The judge then asked whether the defendant understood the warning, and the defendant replied, "Yes." When asked by the court, defense counsel confirmed that "the charges, the elements that need to be proven, maximum penalties, possible defenses, options other than admitting to sufficient facts, as well as potential consequences including, but not limited to, the immigration consequence" had been explained to the defendant by counsel. The judge found a factual basis for the defendant's admission and pronounced it "made freely and voluntarily with full knowledge of the consequences." After accepting the admission, the court continued the case without a finding for three years and imposed a coterminous program of supervised probation.[2]
On June 13, 2017, following an evidentiary hearing, the same **778 judge who had accepted the defendant's admission found that the defendant had committed new criminal offenses in violation of applicable probation terms. Accordingly, the court revoked the continuance without a finding, entered a finding of guilty as to all charges, and sentenced the defendant to serve two years in a house of correction.
Approximately thirteen months later, the defendant filed a motion to withdraw his admission and vacate the court's finding of sufficient facts, arguing that the plea judge "failed to provide the immigration warning required by [ G. L. c. 278, § 29D ], and the defendant now faces deportation as a result." In support of the motion, among other things, the defendant filed a "Notice to Appear" in removal proceedings, dated April 13, 2017, and issued to the defendant by the United States Department of Homeland Security (removal notice). Among the factual allegations in support of deportation asserted in the removal notice, the government included the defendant's January 10, 2017, admission on the charge of assault by means of a dangerous weapon.[3]
*67 On August 15, 2018, the plea judge presided at a hearing on the motion.[4] At the outset of the hearing, the plea judge questioned the "need to be giving every defendant two warnings which essentially is saying the same thing." Despite defense counsel's attempt to distinguish the more general statutory language from the narrower, offense-specific warning required by procedural rule, the court's subsequent questions suggest that confusion persisted.[5] Following argument from both defense counsel and the **779 Commonwealth, the plea judge took the matter under advisement. On September 21, 2018, the court denied the defendant's motion in a margin endorsement order, without explanation.
Discussion. While the immigration consequences of a criminal conviction or guilty plea are not themselves criminal sanctions, they may weigh even more heavily on noncitizen defendants than incarceration. Accordingly, judges in Massachusetts are instructed to provide immigration warnings to criminal defendants during plea colloquies by both statute and court rule.
General Laws c. 278, § 29D, entitles every criminal defendant proffering a plea of guilty, a plea of nolo contendere, or an admission to sufficient facts to receive prior verbal warning from a judge. Specifically,
"If you are not a citizen of the United States, you are hereby advised that the acceptance by this court of your plea of guilty, plea of nolo contendere, or admission to sufficient facts may have consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States."
Id. This statute is unusual in that "[t]he Legislature set forth in the statute the precise language of the warning that the judge was to give a defendant before accepting a plea." Commonwealth v. Valdez, 475 Mass. 178, 183, 56 N.E.3d 183 (2016). This carefully scripted advisory ( § 29D warning) is set off by quotation marks within the statute's text. "The purpose of this requirement is to ensure that defendants entering pleas are made aware of the potential for adverse immigration consequences." Commonwealth v. Berthold, 441 Mass. 183, 184, 804 N.E.2d 355 (2004). See Commonwealth v. Hilaire, 51 Mass. App. Ct. 818, 821, 752 N.E.2d 737 (2001), S.C., 437 Mass. 809, 777 N.E.2d 804 (2002) (statute's purpose is to "ensure that, while the noncitizen who pleads guilty does so at his own peril, he should not do so without *68 fair warning [of the potential immigration consequences]").
Rule 12 of the Massachusetts Rules of Criminal Procedure, which governs the form and content of plea colloquies, also requires a judge to inform the defendant of "potential immigration consequences of the plea." Mass R. Crim. P. 12 (c) (3) (A) (iii) & 12 (d) (3) (A) (iii), as appearing in 470 Mass. 1501 (2015).
**780 The first advisory required by rule 12 is, essentially, an abbreviated version of the § 29D warning and serves the same purpose:
"that, if the defendant is not a citizen of the United States, the guilty plea, plea of nolo contendere, or admission may have the consequence of deportation, exclusion of admission, or denial of naturalization."
Mass. R. Crim. P. 12 (c) (3) (A) (iii) (a) & 12 (d) (3) (A) (iii) (a) (rule [a] warning).[6]
The second immigration consequences advisory required as part of a rule 12 plea colloquy is
"that, if the offense to which the defendant is pleading guilty, nolo contendere, or admitting to sufficient facts is under federal law one that presumptively mandates removal from the United States and federal officials decide to seek removal, it is practically inevitable that this conviction would result in deportation, exclusion from admission, or denial of **781 naturalization under the laws of the United States."
Mass. R. Crim. P. 12 (c) (3) (A) (iii) (b) & 12 (d) (3) (A) (iii) (b) (rule [b] warning). This second warning is both more definitive ("practically inevitable" consequences as opposed to "may have" consequences), and more targeted (it applies only to a limited subset of noncitizen defendants, depending on how Federal law treats the subject crime of a plea or admission). It was added to the rule 12 colloquy in 2015, to recognize that "under federal immigration law there are a substantial number of crimes ... the conviction for which make *69 'deportation practically inevitable' if federal officials seek the defendant's removal," and to warn those noncitizen defendants pleading or admitting to such a "removable offense" with more urgency (citation omitted). Reporters' Notes to Rule 12 (c) (3) (A) (iii) (b), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1579 (LexisNexis 2019). Apparently, it also was intended to remind defense counsel of their duty to provide advice about the immigration consequences of the specific plea or admission for the particular defendant.[7] **782 Id. at 1580.
Whereas rule 12 provides for no specific relief in the event that a judge fails to provide the requisite immigration consequences warnings during the colloquy, the Legislature provided for an express remedy in the event that the statutory § 29D warning is not given as prescribed:
"If the court fails so to advise the defendant, and he later at any time shows that his plea and conviction may have or has had one of the enumerated consequences, even if the defendant has already been deported from the United States, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty, plea of nolo contendere, or admission of sufficient facts, and enter a *70 plea of not guilty" (emphasis added).[8]
**783 G. L. c. 278, § 29D.
Recognizing the specificity and "unique purpose" of this legislative mandate to deliver defined spoken warnings or else administer postconviction relief, Commonwealth v. Villalobos, 437 Mass. 797, 800, 777 N.E.2d 116 (2002), our interpretative approach has been relatively literal and strict. In Hilaire, we held that "[t]o comply with the statute, the judge must give the alien warning, preferably by reading the single quoted sentence directly from the statute." Hilaire, 437 Mass. at 819, 777 N.E.2d 804. Delivery of the warnings must be made by the judge "orally as part of the colloquy, and, where the warnings given during that colloquy fail to meet the statutory requirements, the defendant's signature on the court's standard [written] form containing the warnings does not suffice to avoid the consequences mandated by the statute." Id. at 810, 777 N.E.2d 804.
The Legislature's specific direction concerns only what the judge must say to the defendant and not "[t]he defendant's subjective understanding of immigration law in effect at the time of the guilty plea."[9] Commonwealth v. Rodriguez, 70 Mass. App. Ct. 721, 722 n.1, 876 N.E.2d 487 (2007). Accordingly, the defendant need not demonstrate lack of previous understanding in order to secure § 29D relief, and, where the defendant has not been warned about the immigration consequence that he or she later seeks to avoid through § 29D relief, evidence of the defendant's actual knowledge of that consequence at the time of the plea will not prevent § 29D relief.
In Berthold, we expressly adopted a somewhat narrower interpretation of the scope of the statute's remedy provision, clarifying that § 29D relief is not automatic upon receipt of a defective warning. Berthold, 441 Mass. at 185, 804 N.E.2d 355.
*71 The judge had advised the defendant, "[T]his conviction could affect your status as a resident alien. You could be deported or if you applied for citizenship, it could affect that application." Id. at 184, 804 N.E.2d 355. Because the **784 defendant sought § 29D relief to avoid deportation, we upheld the denial of his motion:
"Although the immigration warning that the judge gave did not cover all of the immigration consequences enumerated in § 29D, we do not construe the statute to impose the extraordinary remedy that it provides in circumstances where the inadequacy complained of is immaterial to the harm for which the remedy is sought. A defendant who has been warned under the statute of the very consequence with which he must subsequently contend is not entitled to withdraw his plea, even if he was not warned of other enumerated consequences that have not materialized." (Emphasis added; citation omitted.)
Id. at 185-186, 804 N.E.2d 355. Even where a warning is incomplete or otherwise defective, § 29D relief is not warranted where a "defendant was warned of the precise immigration consequence that he subsequently faced." Id. at 186-187, 804 N.E.2d 355. Although we have thus affirmed orders denying § 29D relief in cases of incomplete warnings, the practice conforms to the commonsense proposition that a defendant seeking extraordinary relief to avoid deportation should not be afforded additional process because the plea judge omitted a warning about another consequence (viz., denial of naturalization or exclusion from admission) that is irrelevant to that defendant's personal circumstances.
In sum, we have construed the statutory conditions for relief to be (1) that the noncitizen defendant "actually faces the prospect of [an immigration consequence enumerated in the statute] occurring" as a result of the challenged plea, Berthold, 441 Mass. at 185, 804 N.E.2d 355 ; and (2) that the defendant was not verbally warned about that particular adverse consequence during the colloquy as required by the statute, Hilaire, 437 Mass. at 814, 777 N.E.2d 804. If these two requirements are met, the defendant is entitled to relief.[10] No **785 additional showing of prejudice is required.[11]
As the Commonwealth concedes here, the commencement of removal proceedings against the defendant in connection with the challenged admission precludes dispute whether there has been a showing that the defendant "may" suffer deportation. See Valdez, 475 Mass. at 184, 56 N.E.3d 183 (discussing necessary showing under § 29D where immigration consequence at issue is deportation, and citing cases). See also Hilaire, 437 Mass. at 813-814, 777 N.E.2d 804 (adequacy of defendant's showing based on removal notice conceded). To *72 determine whether the defendant is entitled to § 29D relief, then, we need only determine whether the spoken warning provided at the colloquy fulfilled the statutory mandate, or whether the plea judge "fail[ed] so to advise the defendant" in a manner material to the basis asserted for seeking § 29D relief (viz., deportation). G. L. c. 278, § 29D.
The oral warning issued to the defendant during the colloquy substantially tracked the language of the rule (b) warning. We emphasize that the rule (b) warning never was intended to stand alone as a substitute for the § 29D warning (an abbreviated version of which appears as the rule [a] warning). Rather, it was intended to be given in addition to the statutory warning. The Reporters' notes to this subsection of the rule, which was added in 2015, characterize it as an "additional" and "enhanced" warning intended to recognize that "under federal immigration law there are a substantial number of crimes ... the conviction for which make 'deportation practically inevitable' if federal officials seek the defendant's removal." Reporters' Notes to Rule 12 (c) (3) (A) (iii) (b), supra at 1579. Alerting defendants to the practical inevitability of deportation upon pleading or admitting to these particular offenses was deemed important enough to merit a separate, targeted advisory, but was not intended to replace the statutory warning or to suffice without the accompanying rule (a) warning (paraphrasing the statutory language).
Apart from approximating only one-half of the immigration advisory language required by rule 12, the warning given to the defendant here does not equate to a plain statement of three specific immigration consequences that "may" occur, as the Legislature **786 prescribed. Instead, the defendant was told that certain crimes "presumptively mandate[ ] removal" and would make immigration consequences "practically inevitable" -- but without receiving any indication whether the defendant's own offenses (assault and battery by means of a dangerous weapon and threat to commit a crime) constitute that type of crime.
Indeed, defining the crimes that "presumptively mandate removal" is often a highly complex undertaking. Padilla v. Kentucky, 559 U.S. 356, 377, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (Alito, J., concurring). Although certain of the grounds for deportability listed in 8 U.S.C. § 1227 are comprised solely of a noncitizen's conviction, see, e.g., 8 U.S.C. § 1227(a)(2)(B)(i) (conviction of any crime involving controlled substance with one exception), many other offense-based grounds of deportability, including certain aggravated felonies, call for additional information, such as how long a defendant has been in the country, whether there has been a past conviction of a certain type of crime, or the length of the sentence imposed. See, e.g., 8 U.S.C. § 1227(a)(2)(A)(ii) (two or more crimes involving moral turpitude, not arising out of single scheme of criminal misconduct); 8 U.S.C. § 1101(43)(F) (crime of violence for which sentence of at least one year is imposed, whether suspended or committed). Furthermore, not every offense that "presumptively mandates removal" also renders a noncitizen ineligible for discretionary relief such that any of the enumerated immigration consequences is "practically inevitable."
To comprehend whether either part of the rule (b) warning applies to a particular defendant therefore requires both a thorough, nuanced understanding of Federal immigration law and often a significant quantity of personal information about the particular defendant (including immigration history and status, criminal record, *73 and the nature and circumstances of the pending charges). As cogently set forth in the amicus brief submitted by the Committee for Public Counsel Services in support of the defendant, the complexity of determining whether a particular offense "presumptively mandates removal" and makes any of the three enumerated consequences "practically inevitable" is evidenced by the specifics of the instant case.[12] **787 In sum, a determination whether the rule 12 warning applies to an admission or guilty plea to a particular offense requires a careful, thorough review of Federal immigration law and often the criminal and immigration history of the particular defendant. Without the general statutory warning, the rule (b) warning is therefore too technical, legalistic, and complex in its application to be particularly informative. Given the specificity of the legislative mandate that a more general and comprehensible warning be given, we conclude that the defendant is entitled to the legislative remedy. "[W]e are not free to ignore or tamper with that clear expression of legislative intent." Hilaire, 437 Mass. at 819, 777 N.E.2d 804, quoting Commonwealth v. Jones, 417 Mass. 661, 664, 632 N.E.2d 408 (1994).
We also conclude that the warning given was not analogous to the one provided in Berthold, 441 Mass. at 184, 804 N.E.2d 355, which we deemed deficient, but not so deficient as to require § 29D relief. In that case, the defendant was given those parts of the general and comprehensible statutory warning applicable to the defendant and the harm he sought § 29D relief to avoid. Id. Here, the **788 defendant was not. The warning given to the defendant was presented only in complex, legal terminology. This highly technical warning, given alone, *74 without the general, easily comprehensible words the Legislature prescribed, was therefore not sufficient to satisfy the statutory requirements.
Finally, we recognize that the rule (b) warning merits reconsideration.[13] Although well intentioned and designed to put defendants on higher alert regarding certain inevitable immigration consequences before deciding to enter a guilty plea or admission to certain crimes, the warning may not appropriately or at least fully take into account the complexities of Federal immigration law, and not serve its intended purposes, even when combined with the more general warning. At a minimum the relationship between the two warnings may need to be better explained. We therefore ask this court's standing advisory committee on the rules of criminal procedure to review and reconsider the 2015 amendment, to determine whether it is appropriate to further amend or dispense with the amendment altogether. In the interim, we urge judges to ensure that both the statutory immigration warning, preferably read precisely as quoted in G. L. c. 278, § 29D, and the rule (b) warning are delivered at every colloquy, as expressly directed by both rule and statute.
Conclusion. The order denying the defendant's motion to withdraw his plea is reversed, and the matter is remanded for further proceedings consistent with this opinion.
So ordered.

We acknowledge the amicus brief in support of the defendant submitted by the Committee for Public Counsel Services.

Near the beginning of the plea colloquy, when asked whether English was his native language, the defendant volunteered, "I was born here, so English is my native language." This was false. The defendant was born in Haiti.

This was alleged, along with a 2013 conviction of assault and battery by means of a dangerous weapon, to be one of two convictions of "crimes involving moral turpitude not arising out of a single scheme of criminal misconduct," which form a basis for deportation under the Federal Immigration and Nationality Act of 1952, as amended. 8 U.S.C. § 1227(a)(2)(A)(ii). The removal notice also listed a 2013 conviction for violation of an abuse prevention order as a separate, additional ground for deportation. 8 U.S.C. § 1227(a)(2)(E)(ii).

Although the plea judge did not conduct an evidentiary hearing, the removal notice and other documentary evidence filed with the motion and as exhibits to the supporting memorandum of law were before the court at the time of the hearing. These documents included a transcript of the plea hearing, the "green sheet" tendered in the case, and a personal affidavit of the defendant.

It appears that the plea judge believed that the 2015 addition of Mass. R. Crim. P. 12 (c) (3) (A) (iii) (b) replaced the "old" warning: "[W]hy did the new warning come out if -- I don't understand. If the old warning, meaning the statutory warning, was more all encompassing ..., why wouldn't we just continue to be giving ... that warning, as opposed to the one that came out through the rule?" Even after defense counsel's argument, the court apparently remained doubtful: "So, I should tell the Defendant, 'you may have immigration consequences. And you will likely have immigration consequences'; is that what I'm expected to tell a defendant?"

This requirement was first added to the rule effective September 7, 2004, at which time the statutory text of G. L. c. 278, § 29D, provided, in relevant part, that defendants must be informed that "conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization" (emphasis added). G. L. c. 278, § 29D, inserted by St. 1978, c. 383. The amendment to rule 12 was prompted by an earlier decision of this court in Commonwealth v. Villalobos, 437 Mass. 797, 803, 777 N.E.2d 116 (2002), holding the contemporary § 29D warning language to be both "inadequate" and "even potentially misleading," due to changes in Federal law. Amendments to the Federal Immigration and Nationality Act had expanded that law's definition of "conviction" to encompass an admission to sufficient facts. Id. at 802-803, 777 N.E.2d 116. See 8 U.S.C. § 1101(a)(48)(A). Although the § 29D warning then in effect was thus inadequate, in Villalobos this court affirmed the denial of § 29D relief where the judge gave the quoted statutory warning without "substantive deviation or omission," even though it failed to convey that an admission to sufficient facts was considered a "conviction" under Federal law and might trigger immigration consequences. Villalobos, supra at 798 n.1, 777 N.E.2d 116. Because the judge provided the § 29D warning then in effect, there was no "fail[ure] so to advise the defendant" as required to trigger § 29D relief. G. L. c. 278, § 29D. The 2004 addition to the rule 12 colloquy was thus intended to clarify that either an admission to sufficient facts (even where followed by a dismissal) or a guilty plea could give rise to adverse immigration consequences -- a point not then conveyed by the statutory warning about the consequences of a "conviction." Reporters' Notes (Revised, 2004) to Rule 12 (c) (3) (C), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1572 (LexisNexis 2019). Effective October 27, 2004, the Legislature amended G. L. c. 278, § 29D, to make the same clarification, so the rule (a) warning and the § 29D warning now have equal scope. See G. L. c. 278, § 29D, as appearing in St. 2004, c. 225.

The language of the rule (b) warning can be traced back to the United States Supreme Court's opinion in Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). In that case, the Court held that a defendant's right to "effective assistance of competent counsel" under the Sixth Amendment to the United States Constitution includes the right to accurate advice about the deportation risks of entering a criminal plea (citation omitted). Id. at 364, 374, 130 S.Ct. 1473. More specifically, the Court found that constitutionally competent defense counsel would have advised that pleading guilty to the drug distribution offense charged would subject the defendant to automatic deportation: "The consequences of Padilla's plea could easily be determined from reading the removal statute"; "his deportation was presumptively mandatory" and also "practically inevitable but for the possible exercise of ... equitable discretion vested in the Attorney General to cancel removal [in limited cases]." Id. at 364, 369, 130 S.Ct. 1473. Under the rule of Padilla, where the immigration law is "succinct, clear, and explicit" in defining the immigration consequences of a criminal disposition, defense counsel's "duty to give correct advice is equally clear." Id. at 368-369, 130 S.Ct. 1473. The Supreme Court "did not formulate the precise language that would satisfy [this Sixth Amendment] obligation, and understood that the content of the advice would depend on the circumstances." Commonwealth v. DeJesus, 468 Mass. 174, 179, 9 N.E.3d 789 (2014). Justice Alito wrote a separate concurrence in Padilla to emphasize that the Court's approach "is particularly problematic because providing advice on whether a conviction for a particular offense will make an alien removable is often quite complex." Padilla, supra at 377, 130 S.Ct. 1473 (Alito, J., concurring).
In 2014, this court applied the rule of Padilla to hold defense counsel constitutionally ineffective for advising a lawful permanent resident charged with possession with intent to distribute cocaine that a guilty plea would make him "eligible for deportation." DeJesus, 468 Mass. at 175-176, 9 N.E.3d 789. We more specifically held that, under Padilla,
"[c]ounsel ... was obligated to provide to his client, in language that the client could comprehend, the information that presumptively mandatory deportation would have been the legal consequence of pleading guilty. Stated differently, counsel needed to convey that, if Federal authorities apprehended the defendant, deportation would be practically inevitable."
Id. at 181, 9 N.E.3d 789. Although the rule (b) warning takes its language almost directly from this holding, "[t]his noncitizen warning is not meant to displace the critical role of counsel in providing more particular advice concerning the immigration consequences of a particular plea. Quite to the contrary, the warning is meant to trigger that advice ...." Reporters' Notes to Rule 12 (c) (3) (A) (iii) (b), supra at 1580.

"By including the words, 'at any time,' the Legislature made clear that there was no limitation in time to bringing a motion to vacate the plea, even though the passage of time might mean that the tape recording, transcript, and other records of the plea colloquy are no longer available through no fault of the Commonwealth, and that no one may recall what was said." Commonwealth v. Valdez, 475 Mass. 178, 183, 56 N.E.3d 183 (2016). Not only is there no limit on the amount of time that may pass between acceptance of a plea and a motion for § 29D relief, but in the event that no record of the hearing exists, the statute also implements a presumption in favor of the defendant that warnings were not given (in contrast to the "presumption of regularity" that applies in favor of the Commonwealth where records are unavailable but the motion is brought under Mass. R. Crim. P. 30 [b], as appearing in 435 Mass. 1501 [2001]). Id. See G. L. c. 278, § 29D ("Absent an official record or a contemporaneously written record kept in the court file that the court provided the advisement as prescribed in this section ... the defendant shall be presumed not to have received advisement"). These additional features of the statute provide further evidence of how much importance the Legislature placed upon timely delivery of the § 29D warning. See Commonwealth v. Jones, 417 Mass. 661, 664, 632 N.E.2d 408 (1994) (regardless of how much time has passed between conviction and motion to withdraw, "explicit language of the statute unambiguously manifests a legislative intent to place on the Commonwealth the burden of proving that the requirements of G. L. c. 278, § 29D, have been satisfied").

Here, it appears very likely that the defendant understood the immigration consequences of the admission he made: during the colloquy, not only did defense counsel confirm having explained them to the defendant, but the defendant personally (and fictitiously) volunteered that he "was born here." In the sworn affidavit submitted with the motion to withdraw his guilty pleas, the defendant explained that he made this statement "because [he] was afraid of being deported and assumed that it would be better to hide the fact that [he] was not a United States citizen."

We have held that where the statutory prerequisites are met, "the judge has no discretion" and relief must be granted. Commonwealth v. Mahadeo, 397 Mass. 314, 318 n.5, 491 N.E.2d 601 (1986). The requisite determinations are factual, and the standard relatively mechanical when compared with the discretionary standard applicable to a typical motion to withdraw a plea, which may only be granted "if it appears that justice may not have been done" (citation omitted). Commonwealth v. Furr, 454 Mass. 101, 106, 907 N.E.2d 664 (2009). See Commonwealth v. DeMarco, 387 Mass. 481, 486, 440 N.E.2d 1282 (1982).

"A defendant [seeking § 29D relief] need not show ... that he would have pleaded differently to the criminal charges against him, had he received the statutory warning" as though the motion to withdraw the plea or admission were based upon ineffective assistance of counsel for failure to provide accurate advice regarding immigration consequences. Mahadeo, 397 Mass. at 318, 491 N.E.2d 601.

The defendant admitted to sufficient facts for a finding of guilt on the charge of assault by means of a dangerous weapon. The relevant statutory definition (G. L. c. 265, § 15B ) establishes that the offense qualifies as both a "crime involving moral turpitude" (CIMT) and a "crime of violence" for immigration purposes. See Commonwealth v. Cano, 87 Mass. App. Ct. 238, 245-246, 28 N.E.3d 491 (2015) ; United States v. Whindleton, 797 F.3d 105, 111-116 (1st Cir. 2015), cert. denied, --- U.S. ----, 137 S. Ct. 179, 196 L.Ed.2d 147 (2016) ; Matter of J, 4 I. & N. Dec. 512 (B.I.A. 1951) (finding Massachusetts offense of assault by means of dangerous weapon to be CIMT). To identify whether this crime "presumptively mandates removal," or will inevitably result in deportation, however, it is necessary to know much more information. The defendant's prior criminal record and date of admission are needed to determine (1) whether this CIMT was committed within ten years of arrival (the defendant arrived in 1997, so it was not); or (2) whether the defendant had another conviction of a CIMT not arising out of the same scheme of criminal misconduct (he did, so the offense constituted one presumptively mandating removal). Additional information from the record in the pending case might also have determined whether either of the complaining witnesses was protected under domestic violence laws, rendering the offense a crime of domestic violence presumptively mandating removal under 8 U.S.C. § 1227(a)(2)(E)(i) (while unlikely, that remains unconfirmed). Whether a sentence of one year or longer would be imposed (either suspended or committed) would dictate whether the offense was an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), both mandating removal and barring the defendant from eligibility for discretionary cancellation of removal, making deportation practically inevitable. 8 U.S.C. § 1229b(a). Notably, at the time of the plea the defendant remained eligible for a discretionary defense to deportation given that he had been a lawful permanent resident for over seven years at that time, see id., and so removal may not have been practically inevitable (although it became so upon imposition of the committed sentence following the probation violation hearing -- a civil proceeding, where no immigration warnings are required). At the time of the colloquy, the plea judge did not have enough of this information to determine whether the rule (b) warning applied to the defendant, and was prohibited from asking about the defendant's immigration status under G. L. c. 278, § 29D.

We note that the Committee for Public Counsel Services, as amicus curiae, strongly recommends eliminating the rule (b) warning from the criminal plea colloquy altogether.